(No. 84685.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES PLACEK, Appellant.

*Opinion filed December 3, 1998.*

Michael A. Johnson and Ronald S. Tulin, of Chicago (William Ransom, of counsel), for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Kenneth T. McCurry and Nancy Faulls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant, James Placek, was the focus of an undercover police investigation that targeted auto theft crimes. Approximately two years after the investigation began, the police shifted the focus of the undercover investigation from stolen auto parts to illegal drug transactions. An undercover police officer informed defendant that the officer's "boss" needed a cocaine supplier. Six weeks later, defendant sold cocaine to the undercover officer.

Defendant was charged by indictment in the circuit court of Cook County with one count of theft (Ill. Rev.

Stat. 1989, ch. 38, par. 16—1(a)(5)). Defendant was also charged by indictment in the circuit court of Cook County with one count of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)). Over the State's objection, the circuit court granted defendant's motion to consolidate the two cases. The jury returned verdicts of guilty against defendant on all three counts, and the circuit court entered judgment on these verdicts. Defendant filed a motion for a new trial, arguing, *inter alia*, that the provision of the theft statute under which he was prosecuted had been found unconstitutional, approximately one year prior to his trial, in *People v. Zaremba*, 158 Ill. 2d 36 (1994) (declaring section 16—1(a)(5) of the theft statute unconstitutional because it failed to require a culpable mental state). The circuit court granted defendant's motion for a new trial and dismissed the theft charge.

Following a second jury trial on the two drug charges, defendant was convicted of delivery of a controlled substance and possession of a controlled substance with intent to deliver. The circuit court noted that the two drug charges merge and then sentenced defendant to 16 years' imprisonment in the Illinois Department of Corrections on the charge of delivery of a controlled substance. The appellate court, with one justice dissenting, affirmed defendant's conviction and sentence. 292 Ill. App. 3d 521. We allowed defendant's petition for leave to appeal. 166 Ill. 2d R. 315. We now hold that the State's improper introduction of other-crimes evidence at defendant's second trial constitutes reversible error. We therefore reverse and remand for a new trial.

## ANALYSIS

Defendant argues that reversal of his conviction is warranted because: (1) the circuit court erred in denying the defense motion to dismiss the drug charges on double

jeopardy grounds; (2) the prosecution failed to prove defendant guilty beyond a reasonable doubt because the evidence showed that the police entrapped defendant into committing the offense of delivery of a controlled substance; (3) defendant's right to a fair trial was prejudiced by the admission of other-crimes evidence; (4) the prosecution improperly introduced evidence that defendant was associated with two convicted drug traffickers; and (5) the prosecution improperly elicited evidence of alleged racial slurs made by defendant.

## I. Double Jeopardy

Defendant first contends that reversal is required because his second prosecution for delivery of a controlled substance and possession of a controlled substance with intent to deliver violated constitutional guarantees against double jeopardy. Before his second trial, defendant filed a motion to dismiss the drug charges. Defendant argued that, because the prosecution knew or should have known that the theft statute was unconstitutional, a subsequent prosecution would violate double jeopardy. The circuit court denied the motion. Defendant now contends that the State was grossly negligent in prosecuting him for theft when it knew or should have known that the applicable statutory provision had been declared unconstitutional one year prior to defendant's initial trial. Therefore, defendant argues, his second prosecution for delivery of a controlled substance and possession of a controlled substance with intent to deliver violated double jeopardy. We disagree.

Both the United States and Illinois Constitutions provide that no person shall be twice put in jeopardy for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple

punishments for the same offense. *In re P.S.*, 175 Ill. 2d 79, 84 (1997). Nevertheless, "[i]f a new trial is granted on the defendant's application, this is, in itself, no bar to a second trial on the same or amended indictment. [Citation.] The defendant cannot, by his own act, avoid the jeopardy on which he stands and then assert it as a bar to subsequent jeopardy." *People v. Woodward*, 394 Ill. 433, 435 (1946).

In the instant case, although defendant was required to stand trial twice for the drug charges, the second trial did not violate double jeopardy principles. It was not, as defendant argues, the State's gross negligence that caused defendant to suffer the burden of a second trial. To the contrary, the circuit court, pursuant to defendant's request, granted defendant a new trial on the drug charges. Moreover, defendant faced retrial on the drug charges, not on the unconstitutional theft charge.

Defendant further argues that the State's conduct in prosecuting him under an unconstitutional statute constitutes "overreaching." In support, defendant relies upon *People v. Pendleton*, 75 Ill. App. 3d 580 (1979). In *Pendleton*, the trial judge called a weekend recess while the complainant was on the witness stand and still subject to further cross-examination. During the recess, the prosecutor conferred with the complainant regarding her testimony and, when the complainant testified after the recess, she was better able to identify the men who raped her. The trial judge declared a mistrial, and, on retrial, the defendants were convicted. *Pendleton*, 75 Ill. App. 3d at 585-90. The appellate court reversed the defendants' convictions. The court held that the retrial of the defendants violated double jeopardy principles because the prosecutor's misconduct, which prompted the mistrial declaration, constituted "overreaching." Since the mistrial was the result of prosecutorial overreaching, the defendants' interest in finality overrode

society's interest in law enforcement. *Pendleton*, 75 Ill. App. 3d at 594-97.

Defendant's reliance on *Pendleton* is misplaced. The circuit court here did not declare a mistrial. Rather, as noted, the circuit court, pursuant to defendant's request, granted defendant a new trial on the drug charges. Even if defendant's first trial had resulted in a mistrial because of the unconstitutional theft charge, double jeopardy still would not have barred defendant's second trial. Double jeopardy does not bar reprosecution when a mistrial is attributable merely to prosecutorial or judicial error. See *People v. Mink*, 141 Ill. 2d 163, 173 (1990) (noting that double jeopardy does not bar retrial of a defendant whose conviction is set aside because of trial error, as opposed to evidentiary insufficiency). Double jeopardy bars retrial only in situations where the prosecution intended to "goad" the defendant into requesting a mistrial. *People v. Brisbon*, 129 Ill. 2d 200, 220 (1989), citing *Oregon v. Kennedy*, 456 U.S. 667, 676, 72 L. Ed. 2d 416, 425, 102 S. Ct. 2083, 2089 (1982).

Here, the record reveals no evidence that the prosecution intended to "goad" defendant into requesting a mistrial or any other relief. The circuit court specifically found that what had occurred in the courtroom was not the State's fault, and that the State did not know before trial that the theft statute had been declared unconstitutional. The record reveals that the circuit court, the State, and the defense were all unaware during defendant's initial trial that the theft statute under which defendant was charged was unconstitutional. We further note that it was defendant who moved, over the State's objection, to consolidate the theft charge with the drug charges. Had defendant not done so, he would have had a separate trial on the drug charges, and a retrial presumably would not have been necessary. Under the circumstances of this case, we conclude that subjecting de-

fendant to a second trial on the drug charges did not violate double jeopardy principles.

## II. Entrapment

Defendant next argues that he was not proven guilty beyond a reasonable doubt of the drug charges because the evidence showed that he was entrapped into delivering the cocaine to the undercover police officer. Defendant maintains that the evidence did not show that he was predisposed to selling cocaine. We hold that the evidence supports the jury's finding that defendant was not entrapped into delivering the cocaine.

The evidence at the second trial established that defendant was the focus of an undercover police investigation, which targeted auto theft crimes in south suburban Chicago. Defendant was under police surveillance from the summer of 1991 until the spring of 1993. In March of 1993, undercover police officer Kim Castro, a member of the South Suburban Auto Theft Interdiction Network, was introduced to defendant as ''Tony'' by police informant Daniel Dooz. Over the next few months, Officer Castro sold defendant what Officer Castro represented to be stolen auto parts.

Officer Castro testified that, during the auto parts transactions with defendant, their conversations often involved the topic of drugs. Defendant stated that he used marijuana; that he had connections for both marijuana and cocaine; and that he purchased his cocaine from Dickie Messino. Officer Castro revealed that Dickie Messino and his brother Clemente Messino had recently been convicted in federal court of trafficking cocaine.

Officer Castro testified that he eventually began having difficulties obtaining auto parts to sell to defendant. As a result, his unit shifted the focus of its investigation of defendant from stolen auto parts to illegal drug transactions. On June 4, 1993, Officer Castro met with defendant and informed him that Officer Castro's ''boss''

was in need of a cocaine supplier. Defendant indicated that he might be able to supply the cocaine. Five weeks later, Officer Castro called defendant and asked whether defendant could supply the cocaine. Over the next week, a series of telephone calls took place between defendant and Officer Castro. Officer Castro would call defendant to inquire about the cocaine supply, and defendant would tell Officer Castro to call back later because defendant had not yet reached his contact. Then, on July 21, 1993, defendant told Officer Castro that he was able to obtain the cocaine. The next day, defendant met with Officer Castro and another undercover agent at defendant's storage locker, from which defendant retrieved four packages of cocaine. While defendant weighed the cocaine on a scale, other officers arrived and arrested defendant.

Defendant asserted the defense of entrapment at trial. Defendant testified on his own behalf that he was in the business of buying and selling auto parts. He conducted this business under the name of Sans Dealer Service. Defendant only agreed to obtain cocaine for Officer Castro because he wanted Officer Castro to continue to supply him with auto parts. Defendant denied that he made statements regarding drug contacts to Officer Castro. Defendant also claimed that Officer Castro first brought up the discussions about drugs.

The defense of entrapment is found in section 7—12 of the Criminal Code of 1961 (720 ILCS 5/7—12 (West 1992)), which states:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."

Accordingly, to establish the entrapment defense, the ev-

idence must show (1) that the State improperly induced the defendant to commit the crime and (2) that the defendant lacked the predisposition to commit the crime. *People v. Tipton*, 78 Ill. 2d 477, 487-88 (1980); *People v. Cross*, 77 Ill. 2d 396, 405 (1979). Factors to be considered in assessing the defendant's predisposition to commit a drug-related offense include the defendant's initial reluctance or ready willingness to commit the crime; the defendant's familiarity with drugs and willingness to accommodate the needs of drug users; the defendant's willingness to make a profit from the illegal act; the defendant's prior or current use of illegal drugs; the defendant's participation in testing or cutting the drugs; and the defendant's ready access to a drug supply. See *People v. Poulos*, 196 Ill. App. 3d 653, 661 (1990) (and cases cited therein).

Once a defendant presents some evidence to support an entrapment defense, the State bears the burden to rebut the entrapment defense beyond a reasonable doubt, in addition to proving all other elements of the crime. *Tipton*, 78 Ill. 2d at 487. The question of whether the defendant was entrapped is to be resolved by the trier of fact. See *Tipton*, 78 Ill. 2d at 487. Following a conviction, a reviewing court must affirm where, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *People v. Campbell*, 146 Ill. 2d 363, 374-75 (1992); *Tipton*, 78 Ill. 2d at 487.

Applying these concepts to the instant case, we conclude that the evidence supports the jury's rejection of defendant's entrapment defense. Officer Castro testified about his interactions with defendant. According to his testimony, defendant first raised the issue of drugs. When Officer Castro was first introduced to defendant through Daniel Dooz, the three men sat in a restaurant

and talked. Officer Castro reported that the three men talked about stolen auto parts, but then defendant turned the conversation to the topic of drugs. Defendant told the men that he smoked marijuana and had eight pounds of it at home; that he was "into" cocaine; that he had connections for both marijuana and cocaine; and that his cocaine source was Dickie Messino. Only after defendant stated that his current marijuana connection "had been busted in Texas with twenty-two thousand dollars in his boots" did Officer Castro inform defendant that he might be able to obtain marijuana for him. In response, defendant asked Officer Castro to quote him a price for five pounds of marijuana, and informed Officer Castro that he paid his Texas connection $800 a pound for marijuana. This evidence of defendant's familiarity with and use of illegal drugs supports the conclusion that defendant was predisposed to commit a drug-related offense.

The evidence surrounding the cocaine exchange between defendant and Officer Castro further belies defendant's entrapment claim. Officer Castro testified regarding the circumstances surrounding the cocaine transaction. Officer Castro told defendant that his "boss" needed a source for cocaine. Initially, defendant replied that he would not be able to assist Officer Castro's "boss" because defendant owed his cocaine connection money. Officer Castro responded, "No problem." Later in the conversation, defendant informed Officer Castro that there was a possibility that he could supply him with cocaine because the transaction "would be his way of paying back his contact." This statement indicated that defendant was willing to make a profit from the exchange, in the form of reducing the debt owed his contact.

Officer Castro further testified that defendant set the price and the quantity of cocaine to be exchanged, and that defendant arranged the time and the place for the exchange. Laboratory testing revealed that the cocaine

delivered by defendant to Officer Castro was an 89% "pure" product, which indicated that defendant was "close" to the cocaine source. Additionally, the transaction took place in defendant's storage facility, from which defendant retrieved and used his own scale to weigh the cocaine for Officer Castro. All of the foregoing is evidence of defendant's familiarity with drug transactions.

There is evidence in the record that supports defendant's entrapment claim. Periodic police surveillance of defendant for over two years revealed no evidence that defendant was buying and selling cocaine. Officer Castro admitted that, after he began having difficulty obtaining auto parts to sell to defendant, Officer Castro and his unit decided to "see what other criminal activity he [defendant] was involved in." Defendant had declined to participate in drug transactions on three occasions before the meeting at which defendant agreed to supply Officer Castro with cocaine. Six weeks later, defendant finally delivered the cocaine to Officer Castro.

Nevertheless, the aforementioned evidence was introduced at trial, and the jury was instructed as to the defense of entrapment. Based on its verdict, the jury found that defendant was not entrapped. We find that, upon reviewing all of the evidence in the light most favorable to the prosecution, the evidence sufficiently supports the jury's rejection of defendant's entrapment defense, as well as its finding of guilt.

### III. Other-Crimes Evidence

Defendant next argues that the prosecution improperly introduced other-crimes evidence at his second trial, and that the introduction of this evidence prejudiced him in violation of his right to a fair trial. First, defendant asserts that, throughout the trial, the prosecution improperly introduced evidence that defendant was involved in buying and selling "stolen" auto parts. Second, defendant asserts that the prosecution improperly introduced

evidence that, shortly after defendant's arrest for delivering the cocaine to Officer Castro, the police searched defendant's home and surrounding property, and recovered marijuana, a stolen gun, and a stolen Corvette T-top from a barn on defendant's property.

Prior to his second trial, defendant filed a motion *in limine* to prevent the State from referring to defendant's dealings in auto parts as "criminal" behavior. The circuit court denied defendant's request and ruled that the State could admit evidence regarding the transaction of stolen auto parts between defendant and Officer Castro. The State was therefore permitted at trial to introduce Officer Castro's testimony regarding defendant's dealings in stolen auto parts. In his motion *in limine*, defendant also sought to exclude any reference to the recovered marijuana, stolen gun, and stolen T-top. The circuit court ruled that the State could introduce evidence that the police recovered marijuana from defendant's barn, but could not introduce evidence that defendant pled guilty, in the circuit court of Will County, to theft of the T-top. At this time, the circuit court did not rule on the admissibility of the stolen gun. During Officer Castro's direct examination, the State elicited testimony that the police recovered a stolen gun and T-top in defendant's barn. The defense objected, and the circuit court struck the testimony and instructed the jury to disregard this evidence.

The State argues that the evidence regarding defendant's dealings in stolen auto parts was admissible because it was intertwined with the evidence of the cocaine delivery. The relationship between Officer Castro and defendant developed because defendant was under surveillance for dealing in stolen auto parts. The State contends that the details of this relationship are critical to a determination of whether it induced defendant to deliver the cocaine to Officer Castro. Thus, the State

argues, the other-crimes evidence was admissible to rebut defendant's entrapment defense. We do not find the State's arguments persuasive. We hold that the prosecution improperly introduced other-crimes evidence in defendant's second trial and that the introduction of this evidence warrants reversal and remand for a new trial.

Evidence of a crime for which a defendant is not on trial is inadmissible if relevant merely to establish the defendant's propensity to commit crime. *People v. Manning*, 182 Ill. 2d 193, 213 (1998). Such other-crimes evidence is objectionable because a jury, upon hearing this evidence, might convict the defendant merely because it feels that the defendant is a bad person who deserves punishment. *Manning*, 182 Ill. 2d at 213-14. Other-crimes evidence may be admissible, however, when it is relevant to establish any material question other than the defendant's propensity to commit a crime. *People v. Thingvold*, 145 Ill. 2d 441, 452 (1991). For instance, courts have long recognized that other-crimes evidence may be admissible to disprove a defense of entrapment. *Tipton*, 78 Ill. 2d at 484-85, citing *Sorrells v. United States*, 287 U.S. 435, 451-52, 77 L. Ed. 413, 421-22, 53 S. Ct. 210, 216 (1932). Even where other-crimes evidence is relevant for a permissible purpose, the circuit court must weigh the prejudicial effect of admitting the other crimes evidence against its probative value. *Manning*, 182 Ill. 2d at 214. The court should exclude evidence of other crimes where its prejudicial effect substantially outweighs its probative value. See *Manning*, 182 Ill. 2d at 214-15. The admissibility of other-crimes evidence rests within the sound discretion of the circuit court. *People v. Robinson*, 167 Ill. 2d 53, 63 (1995). As such, the circuit court's decision will not be overturned absent a clear abuse of discretion. *Robinson*, 167 Ill. 2d at 63.

In order for evidence of other crimes to be admissible to disprove a defense of entrapment, the evidence must

involve crimes that are specifically relevant to the defendant's claim of entrapment. See *Tipton,* 78 Ill. 2d at 485. In *Tipton,* the court considered whether evidence of criminal acts committed by the defendant after the time of the charged offense could be introduced against the defendant to rebut a claim of entrapment. *Tipton,* 78 Ill. 2d at 484-86. The court held that evidence of other crimes, even crimes committed after the time of the charged offense, may be admitted to rebut an entrapment defense if relevant to the defendant's predisposition to commit the charged offense. *Tipton,* 78 Ill. 2d at 484-85. Such relevance may be demonstrated by the similarity of the other crime to the crime with which defendant is charged, and by the proximity in time of the commission of the crimes. See *Tipton,* 78 Ill. 2d at 485.

Accordingly, in order for evidence of other crimes to be admissible to disprove a defense of entrapment, the evidence must involve crimes that are specifically relevant to the defendant's claim of entrapment. To hold otherwise would allow the entrapment exception to swallow the general rule prohibiting the admission of other-crimes evidence, as it would allow entry of other-crimes evidence merely to establish the defendant's propensity to commit crime in general. This would create the very danger that the prohibition on other-crimes evidence is intended to prevent, namely, that a jury might convict the defendant merely because it feels that the defendant is a bad person who deserves punishment.

In the instant case, the circuit court abused its discretion in allowing the admission of evidence that defendant dealt in stolen auto parts. This evidence was not admissible under the entrapment exception to the general rule prohibiting other-crimes evidence, because it was not specifically relevant to the crimes for which defendant claimed he was entrapped, *i.e.,* delivery of a controlled substance and possession of a controlled substance with

intent to deliver. To the contrary, the evidence that defendant dealt in stolen auto parts merely served the improper purpose of establishing defendant's propensity to commit crime in general.

Indeed, a review of the record reveals that the prosecution's references to defendant's dealings in stolen auto parts had the likely effect of convincing the jury that it should find defendant guilty of the drug charges because defendant is a bad person who deserves to be punished. The State's improper references to the other-crimes evidence began with the first sentence of the prosecution's opening argument. The prosecutor stated: "Good morning. In September of 1991, the Illinois State Police received evidence that the defendant in this case, James Placek, was dealing in stolen auto parts." The prosecutor's opening statement continued to refer to the "stolen" auto parts by stating that the evidence would show that these "stolen" parts were bought and sold by defendant.

During the State's case in chief, Officer Castro testified that he was a member of the South Suburban Auto Theft Interdiction Network, and that the police had received information that defendant was involved in buying and selling stolen auto parts. Officer Castro stated that he met defendant through informant Daniel Dooz, a man whom defendant described as a "very good [car] thief." According to Officer Castro, he told defendant that he had certain stolen auto parts for sale, and defendant responded that these parts were "not good movers." Defendant explained what parts were "good movers" and told Officer Castro to contact him if he found good parts to sell. Officer Castro further testified regarding the details of three separate instances in which defendant purchased stolen auto parts from him.

The testimony that defendant dealt in stolen auto parts was not relevant to either the crimes with which

defendant was charged or defendant's predisposition to commit those crimes. Defendant was charged with delivery of a controlled substance and possession of a controlled substance with intent to deliver, not auto parts theft. Theft of auto parts is not similar to the crime of delivery of cocaine.

We recognize that both the State and the defense acknowledged the relevance of the prior relationship between defendant and Officer Castro to their respective arguments. In fact, defendant testified that he sold the cocaine to Officer Castro so that Officer Castro would continue to sell defendant auto parts. The information regarding the development of Officer Castro's relationship with defendant was therefore relevant to the State's drug case against defendant. Nonetheless, the State should have been required to present this information without referring to the auto parts as "stolen." Consequently, the circuit court abused its discretion in allowing the State to present evidence that defendant dealt in stolen auto parts. The erroneous admission of evidence of other crimes " 'carries a high risk of prejudice and ordinarily calls for reversal.' " *Manning*, 182 Ill. 2d at 214, quoting *People v. Lindgren*, 79 Ill. 2d 129, 140 (1980). We do not regard the State's numerous references throughout its case to defendant's dealings in "stolen" auto parts to be harmless error.

As to Officer Castro's testimony regarding the stolen T-top and gun, this evidence likewise does not relate to either the crimes with which defendant was charged or defendant's predisposition to commit those crimes. Thus, the prosecution should not have presented this evidence, and the circuit court properly sustained defendant's objection to the testimony. As to the recovery of the marijuana, however, this evidence is admissible because it is relevant to counter defendant's entrapment claim on the drug charges. Possession of marijuana is a crime sim-

ilar to delivery of cocaine. We therefore find that the circuit court's ruling admitting this evidence was proper.

The State argues that a jury instruction cured any error in the improper admission of other-crimes evidence. The jury was instructed that "[e]vidence has been received that the defendant has been involved in conduct other than those [sic] charged in the indictment. This evidence has been received on the issue of the defendant's design and predisposition to commit a crime and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that conduct and, if so, what weight to be given to this evidence on the issues of design and predisposition to commit a crime." However, we have held that the other-crimes evidence of defendant's involvement in stolen auto parts should not have been admitted because it was not relevant to the question of whether defendant was predisposed to delivering cocaine. The circuit court's instruction was therefore erroneous under the facts of this case, and certainly did nothing to cure the improper admission of the other-crimes evidence. Because of the improper introduction of other-crimes evidence at defendant's trial, we reverse defendant's conviction and remand for a new trial.

### IV. Admission of Evidence Regarding Defendant's Association with Convicted Drug Traffickers

Defendant also argues that the State improperly introduced evidence that he was associated with Clemente and Dickie Messino, who, according to defendant, are notorious drug dealers in defendant's community. Defendant contends that this improper evidence deprived him of his right to a fair trial. Specifically, defendant points to Officer Castro's testimony that when defendant was under surveillance, he was observed entering an auto parts store owned by Clemente Messino; that Clemente Messino and his brother Dickie Messino were convicted

in federal court of trafficking cocaine; and that defendant stated that his cocaine source was Dickie Messino.

Defendant waived this argument because defense counsel neither objected to this testimony at trial, nor included this claim of error in his motion for a new trial. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant urges us to consider this claim under the plain error doctrine. 134 Ill. 2d R. 615(a). Given that we have already reversed defendant's conviction and are remanding for a new trial, we need not resolve whether the admission of this evidence constitutes plain error.

### V. Admission of Evidence that Defendant Made Racial Slurs

Finally, defendant argues that the State purposefully elicited irrelevant testimony that defendant made racial slurs. Officer Castro testified that, on one occasion, he sold defendant a rear seat to a certain car. Defendant was apparently pleased with this purchase and told Officer Castro that "usually, the black guys he deals with can't get that, that they are too stupid to get them." Defendant waived review of this issue by failing to object to this testimony at trial, and by failing to raise the issue in his motion for a new trial. See *Enoch*, 122 Ill. 2d at 186. Defendant asks us to consider this claim under the plain error doctrine. As before, we need not resolve defendant's plain error claim since we have already reversed defendant's conviction and are remanding for a new trial.

### CONCLUSION

For the reasons stated, we reverse defendant's conviction and remand this cause to the circuit court for a new trial, consistent with the views expressed in this opinion. Double jeopardy principles do not bar the State from proceeding against defendant in a new trial. After thoroughly reviewing the evidence, we find it to have been sufficient to support defendant's conviction. As

such, there is no impediment to a new trial. See *People v. Hope*, 116 Ill. 2d 265, 279 (1986). We, however, in no manner imply that we have made a finding as to defendant's guilt that would be binding on retrial. See *People v. McDonald*, 125 Ill. 2d 182, 202 (1988). The judgments of the appellate court and circuit courts are hereby reversed and the cause remanded to the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*