(No. 85982.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CECIL SUTHERLAND, Appellant.

*Opinion filed November 16, 2000.—Rehearing denied January 29, 2001.*

MILLER, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and Duane E. Schuster, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and William L. Browers and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:
Defendant, Cecil Sutherland, appeals from the denial of his post-conviction petition after an evidentiary hearing in the circuit court of Jefferson County. Because defendant has been sentenced to death, his appeal lies directly to this court. 134 Ill. 2d R. 651(a). We reverse defendant's convictions and remand for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND
Defendant was tried by a jury in 1989 for aggravated kidnapping, aggravated criminal sexual assault, and

three counts of murder. The following evidence was presented at his trial. On July 2, 1987, an oil field worker discovered the nude body of 10-year-old Amy Schultz near an oil lease access road in rural Jefferson County. Amy's body was lying on its stomach covered with dirt. There were shoeprint impressions on her back. A large, open wound on the right side of her neck exposed her spinal cord. Several pubic hairs were found stuck in her rectal area. On the ground near the body were automobile tire impressions and a shoe impression similar to that on Amy's back. Her clothes were found strewn along the access road.

An autopsy of Amy's body revealed a wound to the neck extending from her throat to her right ear. Her right eye was hemorrhaged, the base of her ear was torn away from the skin, and her lips were lacerated from compression against her teeth. There were linear abrasions to the outer lips of the vagina and evidence of tearing of the rectal mucosa. Her body also had a fractured rib, torn liver, bruised esophagus, and hemorrhages in the vocal cords and inside the skull. The medical examiner determined that Amy's attacker had anally penetrated her, strangled her to unconsciousness, slit her throat, and stepped on her body to force exsanguination. Based on her stomach's gastric contents, the time of death was fixed between 9:30 and 11 p.m. on July 1, 1987. Evidence at trial indicated that Amy was last seen walking alone on a road in Kell, Illinois, at approximately 9:10 to 9:15 p.m. on July 1.

Police determined that the tire prints found near the body were consistent with only two types of tires manufactured in North America: the Cooper "Falls Persuader" and the Cooper "Dean Polaris." Police also ascertained that the shoe prints found on and near the body were made by a boot sold by K mart called the "Texas Steer."

Several months after the crime, police were contacted by law enforcement authorities at Glacier National Park in Montana, where defendant had been arrested for shooting at park rangers. Park authorities reported that defendant's car had a single Cooper Falls Persuader tire on the right front wheel, and that a pair of Texas Steer boots was found in his possession. Police also discovered that, at the time of Amy's murder, defendant was living in Dix, Illinois, a few miles from where the body was found.

Expert witnesses testified for the State at trial that the tire prints discovered near the body corresponded with the tread from the tire found on defendant's car in Montana. Expert testimony also indicated that: (1) 34 dog hairs found on Amy's clothing were consistent with hairs from defendant's black Labrador and inconsistent with hairs from Amy's family's dogs and her neighbors' dogs; (2) 29 fibers found on Amy's clothing could have originated from the carpet or upholstery of defendant's vehicle; and (3) 19 fibers found in defendant's vehicle could have originated from Amy's clothing. A forensic scientist also testified for the State that the two pubic hairs recovered from Amy's rectal area could have originated from defendant, but did not originate from 24 other suspects in the case or from any member of Amy's family.

Defendant's sister-in-law testified that on the night of the crime, defendant was at her house near Kell until 8 or 8:30 p.m. An expert for the defense testified that most of the clothing fibers recovered from defendant's vehicle were inconsistent with fibers from Amy's clothing.

The jury convicted defendant on all charges, found him eligible for the death penalty, and determined that there were no mitigating factors sufficient to preclude a sentence of death. The trial court accordingly sentenced defendant to death.

On direct appeal, this court held that the prosecution at trial improperly argued before the jury that the hair and fiber evidence conclusively established that Amy Schultz had been in defendant's car. *People v. Sutherland*, 155 Ill. 2d 1, 25 (1992). We noted that expert testimony at trial instead indicated merely that hair and fibers from the crime scene were "consistent with" those from defendant's car. Nevertheless, we held this error to be immaterial because the evidence at trial was not closely balanced. *Sutherland*, 155 Ill. 2d at 25-26. We thus declined to order a new trial, and affirmed defendant's convictions and death sentence in all respects. *Sutherland*, 155 Ill. 2d at 31.

Defendant subsequently filed a post-conviction petition in the circuit court raising a variety of claims. The court dismissed most of the claims in the petition, but granted an evidentiary hearing on the following allegations: (1) that defendant's trial counsel was ineffective in failing to discover and present evidence that defendant's purchase of "Texas Steer" boots and installation of the Cooper "Falls Persuader" tire on his car both occurred *after* the date of the crime; (2) that the conviction of Amy's step-grandfather for sexual abuse subsequent to her death constituted evidence of defendant's actual innocence; and (3) that the verdict form signed by the jury at sentencing was defective.

At the evidentiary hearing, defendant's mother testified that at the time of Amy Schultz's murder, defendant wore black lace-up boots that were nearly knee-high. In contrast, she testified, the Texas Steer boots recovered from defendant after his arrest in Montana were tan in color and "above-ankle." She stated that defendant bought the Texas Steer boots sometime in July after Amy Schultz's murder, and that she had offered the receipt for this purchase to defendant's counsel prior to defendant's original trial. She also testified that defendant

changed the two front tires on his car before he left for Montana and after the date of Amy's murder.

The defense called a retired Chicago police officer who testified that at least 75% of homicide victims and child sexual assault victims know their attackers. He testified that in his career as a police investigator, he would typically look for suspects in murder and child sexual assault cases among the victim's family and friends and among the last persons to have seen the victim alive. He stated that his review of the evidence and the wounds in the instant case had led him to the conclusion that the victim probably knew her attacker.

William Willis, Amy Schultz's step-grandfather, testified that at the time of Amy's death, he and his wife lived in a house approximately 100 yards from Amy's house. Because Amy's parents worked and attended school, he and his wife often took care of Amy and her brothers. On the evening of July 1, 1987, Amy went to Willis' house to eat blackberries. She was around Willis' dog that evening. About 8:30 p.m., Amy asked Willis for a ride into Kell, approximately three-fourths of a mile from the house. Willis told her no because he had to go to work and had to do some shopping first. Amy then left, walking on foot toward Kell. A few minutes later, Willis drove over the same road toward Kell, and he waved to Amy as he passed her walking in the same direction he was driving. That was the last time he saw Amy alive.

Willis acknowledged that he pled guilty in 1994 to aggravated criminal sexual abuse of a boy in the Boy Scout troop for which he volunteered as a leader. Willis also acknowledged that the presentence investigation report for that crime contained statements from several other minor victims, including Amy's two brothers, that he had sexually abused them. Willis acknowledged that at his sentencing hearing for the 1994 guilty plea, one of

these alleged victims testified that Willis had forced him to have oral and anal sex and that Willis threatened to kill him. Willis testified, however, that there were no allegations that he had ever used weapons or engaged in kidnapping in any of these cases.

A mental health counselor and sex offender treatment provider then testified that, based on her research, pedophiles attracted to prepubescent females show a 22% crossover in also molesting males, and those attracted to males show a 62% crossover in also molesting females. She testified that she had reviewed William Willis' medical and psychological evaluations and had spoken with him briefly. In her opinion, there was a high probability that Willis would cross over from sexually abusing young boys to abusing young girls. She also testified that Willis was prone to outbursts of anger and that when a victim resisted, he used more violent physical force, escalating from fondling to anal rape.

Ronald Lawrence, a friend of defendant, testified that he had changed all of the tires on defendant's car two separate times after Amy Schultz's death and before defendant left for Montana. Lawrence explained that he and defendant had to change tires frequently because the rock road leading to Lawrence's house contained metal particles and railroad spikes. Lawrence testified that he told police and the public defender after defendant's arrest that he had changed the tires on defendant's car after the date of Amy Schultz's murder. Lawrence stated that although he was called and did testify as a mitigation witness at defendant's sentencing hearing, he was not called to testify at the guilt-innocence phase of the trial.

Michael Anthis, who investigated the murder of Amy Schultz as captain of detectives for the Jefferson County sheriff's department, testified that he interviewed Ronald Lawrence on July 12, 1988. Anthis testified that, ac-

cording to his own notes of that interview, Lawrence told him that defendant had been at Lawrence's house near Iuka, Illinois, from 4 p.m. until 10:30 p.m. the night of July 1, 1987. Anthis testified that he did not provide these notes to either the prosecution or defense attorneys prior to defendant's trial and that he did not reduce his notes to a typed report because he was aware that defendant had "offered up a different alibi than what Mr. Lawrence was stating."

James Henson testified that he was defendant's public defender for his trial. Henson testified that although he was aware that authorities in Montana had returned defendant's Texas Steer boots to defendant's mother, Henson did not ask for or examine the boots. Henson also testified that although defendant informed him prior to trial that defendant had purchased the boots approximately two months after Amy Schultz's murder, Henson did not emphasize the boots at trial because he did not think they were important to the case. Henson further testified that before defendant's trial, he was aware of information, including a statement by defendant's mother, that the tires on defendant's car were changed after Amy Schultz's death, but Henson did not investigate these reports and did not make any arguments at trial concerning the timing of the tires' installation. Henson also testified that he did not pursue a trial strategy of casting suspicion on William Willis, Amy's step-grandfather, because he had received a report from the State indicating that the hair and fiber specimens found at the crime scene were inconsistent with samples obtained from Willis.

Defendant testified that between July and October 1987, he bought approximately 14 different used tires. He stated that his family lived on a farm and frequently bought used tires for a variety of purposes. In August 1987, he replaced all four of his tires at Ronald Law-

rence's house, and used these tires when he drove to Montana. Defendant also testified that in July of 1987, he typically wore either tennis shoes or over-the-calf engineer boots. In August 1987, before he drove to Montana, he purchased a pair of Texas Steer boots at K mart. Defendant stated that he provided all of this information to his public defender before his trial and offered to provide corroboration of it, such as his receipt for the boots, but the information was not used at trial.

The parties agreed to forgo testimony or oral argument on the sufficiency of the verdict form at sentencing and instead to submit only written briefs on that issue. The circuit court subsequently denied the post-conviction petition in all respects, ruling that defendant had failed to establish a substantial deprivation of his constitutional rights.

## ANALYSIS

Defendant contends that the circuit court erred in dismissing the post-conviction petition because his trial counsel was ineffective in failing to present evidence concerning the boot and tire impressions found at the crime scene. Defendant argues that trial counsel should have procured and presented evidence that defendant did not come into possession of the relevant boots and tire until after the crime was committed.

Findings entered by a trial court after an evidentiary hearing on a post-conviction petition will be reversed on appeal only if manifestly erroneous. *People v. Coleman*, 183 Ill. 2d 366, 386 (1998). In order to establish a constitutional claim of ineffective assistance of counsel, a defendant must first show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Constitution. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Second, defendant must demonstrate a reasonable probability that, but for counsel's unprofes-

sional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Testimony presented at the post-conviction hearing indicated that, prior to defendant's trial, defense counsel was aware of evidence that defendant did not own a pair of Texas Steer boots at the time of Amy Schultz's murder. Specifically, trial counsel testified at the evidentiary hearing that defendant informed him prior to trial that defendant had purchased his Texas Steer boots two months after the crime occurred. Counsel also testified that he was aware that defendant's mother had the boots in her possession at the time of trial, but that he did not request to examine them. Additionally, defendant's mother testified that at the time of the murder, defendant typically wore a different kind of boots.

The testimony at the post-conviction hearing also indicated that defendant's trial counsel was aware prior to trial of evidence that defendant had changed the tires on his car after the time of Amy Schultz's death but before defendant drove to Montana. Specifically, there was substantial testimony presented at the hearing that counsel learned of this information from three different sources: defendant, defendant's mother, and Ronald Lawrence. Counsel himself acknowledged at the hearing that he was aware of such evidence, but failed to investigate it or present it at trial.

We hold that trial counsel was ineffective in failing to investigate and present evidence concerning the boots and tire. Because the State's evidence at trial consisted primarily of a variety of items introduced to associate defendant with the crime scene, an attack on the suggested links between defendant and the boots and tire could have played a prominent role in the defense. Trial counsel testified at the evidentiary hearing that his main trial strategy was to discredit the expert testimony

purportedly tying defendant to the crime. In light of this strategy, it was incumbent on counsel to utilize available means of casting doubt on the physical evidence which the State relied upon. Although counsel sought to convince the jury that the hair and fiber evidence introduced by the State was not conclusive proof of defendant's guilt, he failed to present the jury with evidence discrediting two of the most salient and significant items in the State's case. Counsel's performance thus fell below a reasonable level of assistance.

We also find that counsel's ineffective performance caused substantial prejudice to defendant. Although the State presented numerous items of evidence associating defendant with the crime, none of them was singularly compelling. If counsel had succeeded in raising questions as to whether the boots and tires owned by defendant played any role in the crime committed against Amy Schultz, there is a reasonable probability that the jury also would have doubted at least some of the other physical evidence which the State attempted to link to the crime, and hence quite possibly may have acquitted defendant.

## CONCLUSION

For the above reasons, we conclude that defendant's convictions must be reversed. In making this determination, we are particularly mindful of our decision in the direct appeal of this case. In that opinion, we held that the prosecution at trial improperly overstated the strength of the fiber-comparison evidence in its arguments to the jury. *Sutherland*, 155 Ill. 2d at 25. Nevertheless, we held that this error did not warrant reversal because of the substantial evidence linking defendant to the crime. *Sutherland*, 155 Ill. 2d at 25. The combination, however, of this improper prosecutorial argument and trial counsel's ineffective assistance now lead us to conclude that the original trial was sufficiently compro-

mised by error as to vitiate our confidence in its fairness. Because we find the evidence at defendant's original trial sufficient to support conviction, a second trial will not be barred by constitutional principles of double jeopardy. In so holding, however, we make no conclusion as to defendant's guilt that will be binding on retrial. See *People v. Placek*, 184 Ill. 2d 370, 390 (1998). In light of our disposition, we need not address defendant's remaining contentions on appeal.

The judgment of the circuit court is reversed, and the cause is remanded to the circuit court for retrial.

*Reversed and remanded.*

JUSTICE MILLER, dissenting:

The defendant raises a number of contentions in this post-conviction appeal, but the majority considers only two matters, which concern allegations that defense counsel was ineffective for failing to present certain evidence at trial. The post-conviction judge rejected these claims after an evidentiary hearing, and those determinations should be upheld on review unless they are contrary to the manifest weight of the evidence. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). On the record before us, I do not believe that the defendant has met this standard, and therefore I would affirm the denial of relief under these portions of the defendant's post-conviction petition.

The defendant first argues that trial counsel was ineffective in failing to challenge the State's contention that he had a preference for the brand of boots whose prints were discovered at the crime scene. The trial evidence showed that the footprints were made by a particular brand, called the "Texas Steer," sold at K mart stores. The defendant, at the time of his arrest in Montana, was in possession of a pair of Texas Steer boots. Although the latter pair of boots did not make the prints found at the crime scene, the prosecution argued that the defendant's

subsequent ownership of a pair of Texas Steer boots evinced his preference for the brand. The defendant argues, and the majority agrees, that trial counsel should have presented evidence to show that the defendant was wearing boots of a different style and brand around the time of the commission of these offenses.

Unlike the majority, I do not believe that counsel's failure to present the proposed evidence was prejudicial to the defendant under the standard expressed in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). A defendant complaining of ineffective assistance of counsel must show both that counsel's performance was deficient and that the deficiency prejudiced the defendant. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. Establishing prejudice requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Assuming, without deciding, that counsel was deficient in this regard, I do not believe that the defendant has established that he was prejudiced by the asserted error.

The relative insignificance of the footprint evidence is apparent from the brief notice it received in this court's opinion on direct appeal. The court's opinion mentioned the footprint evidence only once, during a summary of the testimony presented at trial. According to the opinion, the evidence showed that footprints were found on the victim's back and on the ground nearby, and that the two sets of prints were "similar in design." *People v. Sutherland*, 155 Ill. 2d 1, 7 (1992). Notably, in summarizing the trial evidence the opinion did not also mention the defendant's subsequent possession of boots of the same brand that made the prints, or the prosecution's

theory that the defendant had a preference for boots of that brand. At no other time did the opinion refer to the footprint evidence, and even omitted it from later discussions of the strength of the evidence of guilt in this case. *Sutherland*, 155 Ill. 2d at 17-18, 25.

At trial the State presented strong evidence, apart from that involving the footprints, connecting the defendant to the present offenses. As this court noted on direct review, two pubic hairs removed from the victim's rectum were consistent in all respects with those from the defendant, but were dissimilar to those of the victim's family members and 24 other suspects. Gold-colored fibers found on various articles of the victim's clothing were consistent in all respects with the carpeting in the defendant's vehicle, but were dissimilar to the carpet samples from the child's environment. Also, a foreign fiber found in the victim's shirt was consistent in every respect with fibers from the seat of the defendant's car, but was dissimilar to sample fibers from the child's environment. Other evidence showed that fibers found on the front passenger side of the defendant's vehicle were consistent with fibers from the victim's shirt and shorts. Dog hairs found on the victim's clothing were consistent in all characteristics with a standard from the defendant's dog, and other evidence showed that dog hairs could be found throughout the defendant's car. Finally, tire impressions found at the crime scene could have been made by the defendant's car. *Sutherland*, 155 Ill. 2d at 17-18.

The absence from this court's prior opinion of any discussion of the footprint evidence, beyond an abbreviated reference to the matching prints found at the crime scene, illustrates well its relative lack of importance to the prosecution's case at trial. Here, the evidence showed only that footprints found at the scene could have been made by a Texas Steer brand boot, and that the defendant was later found to be in possession of a pair of boots

of that particular brand. Relying on this evidence, the prosecutor argued that the defendant had a preference for the brand and could have been wearing them when he committed the present offenses. Although there existed evidence that defense counsel could have presented to counter the State's theory regarding the defendant's preference for Texas Steer boots, I do not believe that counsel's failure to introduce this testimony was prejudicial. Because the footprint evidence played only a minor role in the defendant's trial, and because the remaining evidence provided strong proof of the defendant's guilt, I would conclude that the defendant was not prejudiced by counsel's failure to challenge more vigorously the State's theory about his preferred footwear.

In a separate contention, the defendant argues that trial counsel was ineffective for failing to present certain evidence about the tires on his car. At trial, the State introduced testimony showing that tire impressions found at the crime scene were made by either a Cooper "Falls Persuader" or a Cooper "Dean Polaris" tire, and that the tire found on the right front wheel of the defendant's car at the time of the defendant's arrest several months later was a Cooper Falls Persuader tire. Investigators were not able to determine whether the defendant's particular tire had made the impressions.

In the present appeal, the majority agrees with the defendant that trial counsel was ineffective for failing to introduce evidence that the defendant changed the tires on his automobile perhaps once, and possibly twice, in the period between the commission of the present offenses and the defendant's subsequent apprehension in Montana. The evidence presented by the defendant at the post-conviction hearing was contradicted in several important respects, however, and I do not believe that counsel was ineffective for failing to discover and introduce the testimony the defendant now urges.

The evidence in question was introduced at the post-conviction hearing through the testimony of Ronald Lawrence, a friend of the defendant. Lawrence testified that he changed a number of tires on the defendant's car during the period after the commission of the offenses involved here and before the defendant left Illinois for Montana. Lawrence also stated that he had conveyed this same information to defense counsel and to the police some time before trial. In the original proceedings in this case, Lawrence had testified in behalf of the defendant only at the capital sentencing hearing.

Officer David Leigh of the Illinois State Police testified that he questioned Ronald Lawrence in October 1987, four months after the present offenses were committed. At that time, Lawrence did not mention changing any tires for the defendant. Leigh questioned Lawrence a number of years later, in 1996, after Lawrence had provided an affidavit stating that he had changed the defendant's tires. On this occasion, Lawrence said that he had mentioned the changing of the tires to defense counsel, a defense investigator, and a captain with the Jefferson County sheriff's department. Leigh believed that Lawrence was being prompted by his wife during the interview.

The defendant's trial lawyer, James Henson, testified at the evidentiary hearing that he had one note suggesting that defendant might have purchased tires from someone. Henson denied having any specific evidence to support this, however. A defense investigator, Sherry Gutzler, testified that she did not recall that Lawrence had ever told her that he had changed tires for the defendant. She stated that if he had, she would have attempted to follow up on that lead, regarding it as important.

At the conclusion of the evidentiary hearing, the post-conviction judge rejected the defendant's claims that

counsel was ineffective, including the allegation that counsel should have introduced evidence—specifically, Lawrence's testimony—to show that the defendant had his tires changed at some point after the commission of the present crimes and before his departure for Montana. Lawrence's testimony did not go unchallenged, and, on this basis, the post-conviction judge could well have concluded that there was reason to doubt the utility of the witness's testimony at the guilt stage of the proceedings. In addition, there remained strong evidence of the defendant's guilt. As noted earlier, a post-conviction judge's determinations made after an evidentiary hearing will be reversed only if they are contrary to the manifest weight of the evidence. *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). I do not see any reason to disturb the post-conviction court's decision on this issue.

Rather than grant the defendant relief on the two questions discussed by the majority, I would uphold those portions of the post-conviction court's judgment and would consider in this appeal the remaining contentions raised by the defendant but not discussed in the present opinion.