2021 IL App (1st) 200441-U

Order filed: July 23, 2021

FIRST DISTRICT
FIFTH DIVISION

No. 1-20-0441

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | 14 CR 18932 |
| | ) | |
| GEORGE A. KRUEGER, JR., | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirmed the summary dismissal of defendant's postconviction petition, finding that defendant forfeited review of his claims on appeal by failing to raise them in his petition or argue them to the postconviction court. Even addressing the claims on the merits, we found that defendant failed to state the gist of a constitutional claim sufficient to survive first-stage dismissal.

¶ 2    The State charged defendant, George Krueger, with two counts of solicitation of murder

and one count of solicitation of murder for hire for asking an undercover police officer to kill his

ex-girlfriend, Theresa Merchant. Defendant pleaded guilty to one count of solicitation of murder

and received a sentence of 15 years' imprisonment. Defendant subsequently filed a postconviction petition, alleging: (1) his counsel provided ineffective assistance; (2) the State committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) as well as other prosecutorial misconduct; and (3) he is actually innocent. The postconviction court summarily dismissed the petition at the first stage of proceedings. Defendant appeals the summary dismissal of his petition. We affirm.

¶ 3    In 2014, defendant was arrested for criminal damage to property for slashing the tires and smashing the windshields of two vehicles, one of which belonged to Merchant. While in jail, defendant approached a fellow inmate, Nelson Saldivar, and told him that he wanted Merchant killed. Saldivar informed the Cook County Sheriff's Police, who arranged for a judicially authorized consensual overhear, whereby an undercover police officer, Andrew Gutter, posed as a hitman and visited defendant in jail while wearing a recording device. Defendant told Gutter that he wanted Merchant to be murdered because she was a witness against him in the criminal damage to property case, and he provided Gutter with a note containing: Merchant's name, physical description, and home address; her place of employment and the hours she spends there; and the route she drives to and from work, and the year, make and model of her car. Defendant promised to pay Gutter between $3,000 and $4,000 for Merchant's murder.

¶ 4    After defendant was charged with two counts of solicitation of murder and one count of solicitation of murder for hire, he filed a motion asking the court to order the State to produce any information regarding prior "dealings" between Saldivar and any law enforcement agency. Defendant also issued a subpoena to the Cook County Sheriff's Police Department for all documents relating to Saldivar's involvement with law enforcement agencies.

¶ 5    At a hearing held on April 20, 2015, the trial court stated that it would conduct an *in camera* review of all documents returned pursuant to the subpoena and tender any relevant documents to

the parties. In July 2015, the trial court informed the parties that it had reviewed the subpoenaed documents and decided not to release any of them, noting that they contained "sensitive material" and that "whether or not [Saldivar was] a government informant or has worked on other cases is irrelevant" to the criminal proceedings against defendant.

¶ 6 Defendant moved the court to reconsider its decision not to turn over the subpoenaed documents as they were potentially relevant to the presentation of an entrapment defense. The State objected, noting:

"[W]e do concede that matters regarding [Saldivar's] cooperation with this specific case is relevant and specifically we have tendered to counsel a transcript of the plea regarding [Saldivar's] pending case while he cooperated in this case. And in addition, Judge, relevant would be [Saldivar's] name, his date of birth, his criminal background. We will comply with all that, but anything beyond this case, Judge, *** is not relevant."

¶ 7 Defendant responded that Saldivar's prior dealings with law enforcement were relevant to show his knowledge of how to "work with a government agent as an informant *** to gain advantage for himself" and to show his motive "to procure the entrapment against [defendant] to get himself favor."

¶ 8 The trial court denied the motion to reconsider.

¶ 9 Defendant also issued another subpoena for audio recordings of phone calls between Saldivar and law enforcement personnel. The trial court stated that it would listen to the audio recordings *in camera* to determine whether any of them were relevant to the defense but there is nothing further in the record regarding the court's findings with respect to those audio recordings. None of the audio recordings were released to defendant.

¶ 10    On November 8, 2017, pursuant to a negotiated plea, defendant pleaded guilty to one count of solicitation of murder. The trial court accepted defendant's guilty plea and sentenced him to 15 years' imprisonment.

¶ 11    Defendant subsequently filed a postconviction petition alleging that his counsel provided ineffective assistance by: misadvising him that his guilty plea would waive any *Brady* violations committed by the State; refusing to file an interlocutory appeal from the court's denial of the motion to reconsider its decision not to turn over the subpoenaed documents; failing to request a pretrial evidentiary hearing regarding Saldivar's reliability; failing to file a motion for substitution of judge; failing to raise a defense of entrapment; improperly advising defendant that he did not have any "mitigating factors" warranting a better plea deal and coercing him into pleading guilty; and failing to inform the court of the State's plea deal with Saldivar on his own criminal cases that violated sentencing guidelines. Defendant also alleged that the State committed a *Brady* violation by failing to disclose all of Saldivar's "dealings" with law enforcement, and that the State committed additional prosecutorial misconduct by offering incentives to Saldivar to frame him. Finally, defendant asserted his actual innocence.

¶ 12    In a 15-page written order, the postconviction court (which was different than the trial court that had accepted his guilty plea) addressed and rejected each of defendant's arguments and summarily dismissed his petition as frivolous and patently without merit. The postconviction court never reviewed the documents that earlier had been reviewed *in camera* by the trial court, as defendant never asked it to do so. The record is unclear whether those documents were even made available to the postconviction court. Defendant appeals the summary dismissal of his postconviction petition.

¶ 13    The Post-Conviction Hearing Act (Act) provides a method whereby a defendant can assert that his conviction or sentence resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1 *et seq*. (West 2020). The Act provides a three-stage process for adjudication of a postconviction petition. *People v. Applewhite*, 2020 IL App (1st) 142330-B, ¶ 15. This case falls within the first stage. During the first stage, the postconviction court must assess the petition, taking the allegations as true, and determine if it is frivolous or patently without merit such that it failed to state the gist of a meritorious constitutional claim. *Id.*; *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis in either law or in fact. *People v. Tate*, 2012 IL 112214, ¶ 9. Our review of a first-stage dismissal is *de novo*. *Applewhite*, 2020 IL App (1st) 142330-B, ¶ 15.

¶ 14    On appeal, defendant contends that his postconviction petition potentially states the gist of two meritorious constitutional claims: (1) that he was denied the right to confront the witnesses against him and (2) that his guilty plea was unknowing and involuntary because he lacked all discoverable materials to assess whether he would have a viable entrapment defense at trial. Defendant asks us to review the materials which the trial court reviewed *in camera* so as to determine whether, in fact, his postconviction petition states the gist of those two claims.

¶ 15    Initially, we note that the materials which the trial court reviewed *in camera* were not included in the record on appeal. After the record was filed, defendant filed a motion in this court on March 15, 2021, asking us to order the circuit court clerk to deliver a supplemental record containing the materials that had been reviewed *in camera* by the trial court. We entered an order on March 17, 2021, granting defendant's motion "in part," stating that "The materials shall be placed in a certified supplemental record by the clerk of the circuit court and filed instanter, under seal to be accessible only by justices of this court and court staff." However, no such certified

supplemental record has been filed with us and thus the materials which were reviewed *in camera* by the trial court have not been made part of the appellate record. As the appellant, defendant bears the burden of following up with the circuit court clerk's office after the entry of the March 17 order and filing any necessary pleadings/motions ensuring the delivery of the certified supplemental record to support his claim of error. Generally, any doubts arising from the incompleteness of the record are resolved against the appellant and we presume that the order appealed from conformed to the law and facts of the case. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). However, in this case, the incompleteness of the record does not hinder our review, and we have made no presumptions against defendant or resolved any doubts against him. Instead, for the reasons that follow we hold that defendant has forfeited review of his claims by failing to raise them in his postconviction petition and that even in the absence of forfeiture defendant failed to state the gist of any constitutional claims.

¶ 16    First, we address the State's contention that defendant has forfeited review of his claims on appeal. Our supreme court has held that "[t]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations in the petition, liberally construed and taken as true, are sufficient to invoke relief under the Act." *People v. Coleman*, 183 Ill. 2d 366, 388 (1998). Section 122-3 of the Act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."[1] 725 ILCS 5/122-3 (West 2018). Given the prevailing standard of review and the plain language of section 122-3,

---

[1] Our supreme court has noted that waiver in the context of postconviction petitions is better referred to as "forfeiture." See *People v. Lusby*, 2020 IL 124046, ¶ 27.

our supreme court has held that a claim not raised in a postconviction petition may not be asserted for the first time on appeal. *People v. Jones*, 213 Ill. 2d 498, 505 (2004).

¶ 17    Even given a liberal construction, defendant's postconviction petition did not raise either of the claims he asserts now on appeal, *i.e.*, the confrontation clause claim or the claim that his guilty plea was involuntary because he did not receive all discoverable materials related to a possible entrapment defense. Defendant also did not request that the postconviction court review the materials which the trial court earlier had reviewed *in camera*, and therefore those materials were not reviewed or relied on by the postconviction court when dismissing defendant's petition as frivolous and patently without merit. As the claims asserted on appeal, including any issue arising from the postconviction court's failure to review the *in camera* materials, were not raised in the petition, they are forfeited and may not be asserted for the first time on review of the summary dismissal order.

¶ 18    Even if the claims had not been forfeited, we would affirm. Defendant's first claim is that he was denied his constitutional right to confront the witnesses against him. However, by pleading guilty, defendant waived several constitutional rights, including his right to confront his accusers. *People v. Williams*, 188 Ill. 2d 365, 370 (1999). Because a guilty plea involves the waiver of several constitutional rights, including the right to confront his accuser, due process requires that the record affirmatively show that the plea was entered into knowingly and voluntarily. *People v. Resendiz*, 2020 IL App (1st) 180821, ¶ 26. Supreme Court Rule 402 requires that before accepting a guilty plea, the court must admonish defendant and determine that he understands: (1) the nature of the charge; (2) the minimum and maximum sentencing ranges; (3) that he has a right to plead not guilty, persist in that plea if it is already made, or plead guilty; and (4) that, by pleading guilty,

he waives the right to a jury trial and to confront the witnesses against him. Ill.S.Ct.R.402(a) (eff. July 1, 2012).

¶ 19    The trial court here complied with Rule 402 when accepting defendant's guilty plea and we specifically note the following colloquy:

> "THE COURT: You are waiving your right to cross-examine and confront any witnesses that would testify against you ***. Do you understand that?
>
> DEFENDANT: Yes."

¶ 20    Accordingly, defendant failed to state the gist of a confrontation clause violation.

¶ 21    Defendant's second claim is that his guilty plea was unknowing and involuntary because he lacked all discoverable materials to assess whether he would have a viable entrapment defense at trial. If those materials supported an entrapment defense, he would have pleaded not guilty.

¶ 22    To prove entrapment, defendant must show that a State actor improperly induced him to commit the crime and that he lacked the predisposition to commit the crime. *People v. Placek*, 184 Ill. 2d 370, 380-81 (1998). Defendant here failed to allege either of these facts in his petition and thus did not provide even an arguable basis or the gist of a claim of a viable entrapment defense that would have caused him to change his plea from guilty to not guilty.

¶ 23    For all the foregoing reasons, we affirm the summary dismissal of defendant's postconviction petition.

¶ 24    Affirmed.