(No. 61146.— )

THE PEOPLE *ex rel.* RICHARD M. DALEY, State's Attorney, Movant, v. JOHN CRILLY, Judge, *et al.,* Respondents.

*Opinion filed October 3, 1985.*

304

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Joan S. Cherry and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Deborah A. White, Thomas J. Reynolds and Robert E. Lee, Assistant Public Defenders, of counsel), for respondents.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Vincent Sabella, was charged with murder and conspiracy to commit murder. A jury in the circuit court of Cook County found the defendant guilty of the conspiracy count but was unable to reach a decision on the murder charge. The trial judge thereupon discharged the jury; in doing so he did not use the word "mistrial." After discharging the jury, the trial judge entered judgment on the conspiracy charge.

Ten days later the defendant filed a motion for a new

trial. He also renewed a motion for a directed verdict on the murder charge which the trial judge had denied before the case went to the jury. At the same time the State moved for a retrial of the murder charge and requested that sentencing on the conspiracy conviction be deferred until after the defendant had been retried for murder.

Subsequently, the trial judge granted the defendant's motion for a directed verdict of not guilty at the end of all the evidence on the murder charge and announced "judgment of acquittal" on that charge. Immediately thereafter he sentenced the defendant to a prison term on the conspiracy conviction. The State then petitioned this court, pursuant to our Rule 383 (94 Ill. 2d R. 383), to exercise our supervisory authority over Illinois courts (Ill. Const. 1970, art. VI, sec. 16) and to vacate the circuit court order acquitting the defendant of murder.

The State maintains that the discharge of the jury after it failed to reach a verdict on the murder charge constituted a mistrial as to those counts even though the trial judge did not formally declare a mistrial; this, the State contends, "vitiated" or "nullified" the entire murder trial so that there was no longer any evidence before the court on which it could determine that an acquittal was required.

Two separate concepts which both apply in this case provide the answer to the State's position. The first is the inherent power of a court in a criminal case to correct its own rulings, even in the absence of a statute or rule granting it authority to acquit a defendant after a jury has found him guilty. (*People v. Van Cleve* (1982), 89 Ill. 2d 298.) In *Van Cleve* this court sanctioned the entry of a judgment of acquittal by a trial judge following a guilty verdict returned by a jury even though the trial judge, as in this case, had previously denied a motion for a directed verdict at the close of the evidence.

The second concept is the constitutional protection against double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, sec. 10). It safeguards a defendant against being forced to undergo a second trial where the evidence introduced at the first trial is insufficient for conviction. In *Burks v. United States* (1978), 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141, the court held that when a defendant contends, even after a jury has found him guilty, that the evidence was not sufficient for conviction it is the responsibility of an appellate court to review the trial court's order denying acquittal. The court in *Burks* observed:

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (437 U.S. 1, 11, 57 L. Ed. 2d 1, 9, 98 S. Ct. 2141, 2147.)

(See also *People v. Taylor* (1979), 76 Ill. 2d 289, 309 (appellate court, in reversing criminal conviction and remanding for a new trial without deciding whether evidence in the first trial was insufficient, risks subjecting the defendant to double jeopardy).) In *People v. Holloway* (1982), 92 Ill. 2d 381, 386-87, this court elaborated on the rule set forth in *Burks*:

"Clearly, the double jeopardy clause prevents retrial on the same charge where a reversal of the defendant's conviction is based upon the insufficiency of the evidence. [Citations.]

The prosecutor is not afforded a second opportunity to supply evidence that he or she failed to produce at the first trial on the same charge. For as Justice O'Connor, writing for the majority in *Tibbs v. Florida,* has said: 'This prohibition, lying at the core of the Clauses's protections, prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of convic-

tion through sheer governmental perseverance.' *Tibbs v. Florida* (1982), 457 U.S. 31, 41-42, 72 L. Ed. 2d 652, 661, 102 S. Ct. 2211, 2218."

The State does not quarrel with *Van Cleve*, but argues it is not applicable here because this case involved a hung jury which resulted in a mistrial rather than a jury which returned a guilty verdict. Even if it is conceded that the trial concluded in a mistrial on the murder charge, the distinction the State draws is without merit.

First, the trial judge retained jurisdiction of the defendant and indictment—he had not yet sentenced the defendant on the conspiracy conviction at the time he acquitted the defendant of murder. So long as the case was pending before him, the trial judge had authority under *Van Cleve* to correct his interlocutory rulings. In fact he even had authority under *People v. Heil* (1978), 71 Ill. 2d 458, to reconsider any order which had previously been executed (there the circuit judge vacated his prior order discharging the defendant because of failure to grant the defendant a speedy trial).

Second, contrary to the State's view, evidence introduced at a criminal trial does not vanish after a jury is discharged, even if the discharge constituted a mistrial. The evidence is still available for numerous purposes, including impeachment and as testimony in the case of a witness who dies before the retrial. (See, *e.g., People v. Tennant* (1976), 65 Ill. 2d 401; *Mattox v. United States* (1895), 156 U.S. 237, 39 L. Ed. 409, 15 S. Ct. 337; McCormick, Evidence secs. 251, 261 (2d ed. 1972), and cases cited therein.) In addition, proceedings which end in a mistrial may be examined to determine whether another trial may be barred by prosecutorial misconduct. (See *United States v. Jorn* (1971), 400 U. S. 470, 27 L. Ed. 2d 543, 91 S. Ct. 547; *People v. Handley* (1972), 51 Ill. 2d 229.) We find no reason that the evidence cannot also be reviewed for the purpose of determining whether

it was insufficient for conviction.

Third, when a mistrial is declared because the jury is deadlocked, retrial is barred by the double jeopardy prohibition if the evidence introduced at the trial was insufficient to convict the defendant. While a retrial is permissible when the first trial produced sufficient evidence to convict the defendant (see *United States v. Sanford* (1976), 429 U.S. 14, 50 L. Ed. 2d 17, 97 S. Ct. 20; *United States v. Perez* (1824), 22 U.S. 579, 6 L. Ed. 165; *United States v. Goldstein* (2d Cir. 1973), 479 F.2d 1061; *United States v. Castellanos* (2d Cir. 1973), 478 F.2d 749; *People v. Bean* (1976), 64 Ill. 2d 123), this is not the rule when the evidence presented at the first trial was insufficient for conviction. *Burks*, *Holloway* and *Taylor* teach us that retrying a defendant where the evidence presented by the prosecutor at the first trial was insufficient to convict subjects him to double jeopardy.

In determining whether the defendant's double jeopardy protection is being violated, the law is indifferent as to whether the first trial ends in a guilty verdict or in a deadlocked jury. If the evidence is insufficient as a matter of law to convict in the first trial, it would still be insufficient after the second trial, for *Burks* and *Holloway* preclude the State from offering new and additional evidence in the second round. The second trial would be a useless exercise which would serve only to harass the defendant by subjecting him to needless embarrassment, expense and anxiety. Thus, the proper application of the constitutional prohibition against double jeopardy requires that, when the issue is raised by the defendant, the trial judge must decide whether the evidence was sufficient for conviction, both where the jury returned a guilty verdict and where it was unable to agree on a verdict. If the judge incorrectly decides in either instance that the evidence was sufficient, he is subject to reversal.

*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349, and *United States v. Suarez* (2d Cir. 1974), 505 F.2d 166, support and require this application of the double jeopardy prohibition. Both cases ended with juries discharged because they were deadlocked. Following the discharge of the jury, in each case the trial judge concluded that the evidence had not been sufficient to convict the defendant, and entered an order, such as the one in this case, acquitting him. The authority for the order in each case was Rule 29(c) of the Federal Rules of Criminal Procedure, which permits a trial judge, on motion, when a jury is discharged without having returned a verdict, to enter a judgment of acquittal. In both cases the reviewing court determined that allowing a retrial after the judgment of acquittal would subject the defendant to double jeopardy in violation of the constitutional safeguard and that, therefore, an appeal from the order of acquittal was not permissible.

In *Martin Linen Supply*, as in this case, the prosecution argued that " '[o]nce the district court declared a mistrial and dismissed the jury, any double jeopardy bar to a second trial dissolved.' " (430 U.S. 564, 572, 51 L. Ed. 2d 642, 652, 97 S. Ct. 1349, 1355.) The government's attempt to distinguish the situation where the trial judge directs the jury to return a verdict of not guilty as one where the formal verdict of acquittal, though on direction, was rendered by the jury which was then discharged, rather than by the judge, was rebuffed by the court with the following response:

"This in effect turns the constitutional significance of a \*\*\* judgment of acquittal on a matter of timing. Thus, if the judge orders entry of judgment of acquittal on his own or on defendant's motion prior to submission of the case to the jury, \*\*\* or after submission but prior to the jury's return of a verdict, \*\*\* and the jury thereafter is

discharged—the Government's argument necessarily concedes that the Double Jeopardy Clause would preclude both appeal and retrial. If, however, the judge chooses to await the outcome of the jury's deliberations and, upon its failure to reach a verdict, acts on a timely motion for acquittal *** the Government submits that the Double Jeopardy Clause should not bar an appeal.

We are not persuaded. Rule 29 contemplated no such artificial distinctions. *** Insofar as the Government desires an appeal to correct error, irrational behavior, or prejudice on the part of the trial judge, its interest is not dependent on the point of trial when the judge enters his *** judgment, and suffers no special prejudice by a judge's acquittal after the jury disagrees and is discharged. And to the extent that the judge's authority under Rule 29 is designed to provide additional protection to a defendant by filtering out deficient prosecutions, the defendant's interest in such protection is essentially identical both before the jury is allowed to come to a verdict and after the jury is unable to reach a verdict ***." 430 U.S. 564, 574-75, 51 L. Ed. 2d 642, 652-53, 97 S. Ct. 1349, 1356.

The reliance by the Supreme Court in *Martin Linen Supply* on Rule 29(c) indicates that a rule permitting a trial judge to order an acquittal based on the insufficiency of the evidence after a deadlocked jury has been discharged states a valid legal concept. It also disproves the State's argument that the discharge of a hung jury in a criminal case results in some metaphysical change in the evidence which renders it nonexistent thereafter for the purpose of deciding whether it is sufficient to convict. Were the State's theory sound, Rule 29(c) could not be applied as it was in *Martin Linen Supply*, for the court would no longer have any evidence before it to evaluate.

While Illinois has no rule or statute comparable to Federal Rule 29, trial courts have the inherent power to correct their previous rulings. (*People v. Van Cleve*

(1982), 89 Ill. 2d 298.) It would be absurd to suppose that trial judges who conclude they have made mistakes should not be free to correct them within an appropriate time frame. Thus, this inherent power accomplishes the same purpose and may be given the same effect as a formal rule such as Rule 29; we perceive no reason for not applying that power in the same manner in which the court applied Rule 29 in *Martin Linen Supply*. The court's response to the prosecutor in that opinion applies with equal force and logic to the State's Attorney's identical argument in this case. Therefore, the double jeopardy prohibition places upon a trial judge the responsibility of spotting deficient prosecutions—those in which the evidence is insufficient to convict—and his authority to do so is not curtailed by the contingency that the jury is unable to agree on a verdict.

The State does not dispute that the trial judge in this case, after discharging the jury, reached the correct result. The trial judge stated that he was not relying on the defendant's contention based on section 8—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 8—5) that his conviction of conspiracy (the inchoate offense) precluded his conviction for murder (the principal offense). Instead the trial judge explained that he had reviewed the defendant's motion for a directed verdict of not guilty on the murder counts at the end of all the evidence with "all the aftersight of a Monday morning quarterback." Although a judgment of acquittal does not trigger double jeopardy protection unless it "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged" (*United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1355), it is clear that the judgment of acquittal in this case represented such a resolution. The trial judge, after reevaluating the evidence, decided in hindsight that there was in-

sufficient evidence to establish as a matter of law some or all of the essential elements of murder.

Even if the trial judge appraised the evidence incorrectly in deciding that it was insufficient for conviction, that order is not reviewable. In *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 468, this court not only cited *Martin Linen Supply* but also explained the finality of an acquittal under the double jeopardy clause after a trial in which the defendant had been placed in jeopardy:

> "Citing *Fong Foo v. United States* (1962), 369 U.S. 141, 143, 7 L. Ed. 2d 629, 631, 82 S. Ct. 671, 672, the court was careful to point out in *DiFrancesco* that the double jeopardy clause prohibits further prosecution even where an acquittal is 'based upon an egregiously erroneous foundation.' [Citation.] An acquittal of the sort referred to in *DiFrancesco* is 'a resolution, correct or not, of some or all of the factual elements of the offense charged.' "

In *Sanabria v. United States* (1978), 437 U.S. 54, 64, 57 L. Ed. 2d 43, 54, 98 S. Ct. 2170, 2179, the court said:

> "[W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous."

It is therefore plain that allowing the supervisory order which the State seeks would subject the defendant to a second trial after he was acquitted because insufficient evidence was introduced to convict him. This would deprive the defendant of his constitutional protection against double jeopardy in the same way as would reversing an acquittal in an appeal by the State. Dispositive of the State's application for a supervisory order is the following observation in *Martin Linen Supply*:

> "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.' *United States v. Ball*,

163 U.S. 662, 671 (1896)." (430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1354.)

For these reasons we decline to exercise our supervisory authority. It is unnecessary in view of this conclusion for us to consider the defendant's additional contention that section 8—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 8—5) prohibits conviction of the principal offense of murder after the defendant was sentenced for the inchoate offense of conspiracy to commit murder.

*Supervisory order denied.*