Docket No. 93602–Agenda 9–January 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JASON HENRY, Appellee.

Opinion filed April 17, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

The principal issue presented in this appeal is whether certain statements made by the circuit court amounted to an acquittal, for double jeopardy purposes, under the reasoning set forth in 
People v. Williams
, 188 Ill. 2d 293 (1999).

BACKGROUND

On September 3, 1996, defendant was charged in a juvenile petition with the offense of involuntary manslaughter (720 ILCS 5/9–3(a) (West 1996)). The petition alleged that defendant, who was 16 years old at that time, was a delinquent minor in that on September 2, 1996, he recklessly struck Curtis Hurlbut in the face, causing him to fall and strike his head on a concrete sidewalk, resulting in Hurlbut’s death. Defendant, represented by the public defender, pled guilty to the allegations in the petition. As part of the plea agreement, the State agreed not to file any proceedings to transfer this matter to the adult criminal court. The circuit court of Madison County accepted defendant’s guilty plea, adjudged defendant a delinquent minor, and, on October 30, 1996, committed defendant for an indeterminate period to the juvenile division of the Department of Corrections.

On November 13, 1996, defendant, represented by retained counsel, filed a motion to withdraw his guilty plea. In his motion, defendant alleged that he was not appraised of his rights in this matter prior to agreeing to plead guilty, and that he made the plea under duress due to the prosecutor’s threats that he would be charged with murder as an adult if he did not plead guilty. In addition, defendant also alleged that the guilty plea was made despite the fact that no autopsy report or death certificate had been filed with respect to Hurlbut, which would allow defendant or his counsel to make an informed decision as to how to proceed in this matter. Finally, defendant further alleged that there were conflicting witness statements with respect to the events leading to Hurlbut’s death, and that the evidence indicated that Hurlbut’s death was accidental and not intentional. On December 31, 1996, the circuit court granted defendant’s motion to withdraw his guilty plea.

On January 8, 1997, the State filed a motion, pursuant to section 5–4 of the Juvenile Court Act of 1987 (705 ILCS 405/5–4 (West 1996)), requesting that defendant be tried as an adult. The circuit court granted the State’s motion on January 22, 1997, and transferred this matter to adult criminal court. On January 24, 1997, defendant was charged by information with the involuntary manslaughter of Curtis Hurlbut. Defendant was charged for this same offense by indictment on February 6, 1997. On March 9, 1998, the State filed an amended information, which, in addition to involuntary manslaughter, charged defendant with the offense of aggravated battery. Specifically, count II of the amended information alleged that defendant committed aggravated battery in that he committed a battery on a public way, being a public sidewalk, by striking Hurlbut in the face, in violation of section 12–4(b)(8) of the Criminal Code of 1961 (720 ILCS 5/12–4(b)(8) (West 1996)).

On March 10, 1998, defendant’s jury trial commenced. The State presented the testimony of two eyewitnesses who stated that defendant, on a dare, struck Hurlbut in the face with a closed fist. The witnesses further testified that at the time he was hit, Hurlbut was standing on a grassy lawn. However, as a result of the impact, Hurlbut fell backwards and struck his head on a concrete sidewalk. The State also presented the testimony of a law enforcement officer who arrived at the scene shortly after the incident. The officer found Hurlbut, still alive, lying face up, bleeding from the back of his head and his mouth. According to the officer, the lower part of Hurlbut’s body was located on the grassy lawn, while the upper part of Hurlbut’s body was on the sidewalk. Hurlbut was taken by ambulance to a hospital, where he later died.

Defendant testified on his own behalf. According to defendant, Hurlbut had previously made comments that made defendant uneasy. According to defendant, on the date of Hurlbut’s death, Hurlbut approached defendant and defendant became nervous. Defendant admitted striking Hurlbut and that Hurlbut thereafter fell to the ground and hit his head on the sidewalk. Defendant stated that Hurlbut’s upper body–his shoulders and head–were on the sidewalk, while the lower portion of Hurlbut’s body remained on the grassy lawn.

At the close of evidence, defense counsel moved for a directed verdict on both charged counts. With respect to the charge of aggravated battery in count II, defense counsel argued that the State had failed to prove that the victim was “on or about a public way,” as required by section 12–4(b)(8) of the Criminal Code of 1961 (720 ILCS 5/12–4(b)(8) (West 1996)), in that the State adduced no testimony that the battery was committed on the sidewalk. Defense counsel argued that the evidence showed that the victim was standing on the grass when he was hit, and that when he landed he was lying partially on the sidewalk and partially on the grass.

The circuit court denied defendant’s motion for directed verdict as to the charge of involuntary manslaughter contained in count I. However, as to the aggravated battery charge contained in count II, the following colloquy occurred between the circuit court judge, the prosecutor, and defense counsel:

“THE COURT: “[C]learly, based on the evidence of the two eyewitnesses, even taking into account some distinction that [one witness] made as to [Hurlbut’s] location being a little closer to the sidewalk, I don’t believe we have any evidence that [Hurlbut] was on or about a public sidewalk, in that he was just simply up in the yard when this happened. So I’m going to grant the directed verdict as to Count II. Anything else while we are still on the record?

THE PROSECUTOR: Judge, I would ask for leave to appeal that ruling and let it go up.

DEFENSE COUNSEL: Does that mean a mistrial here or–

THE PROSECUTOR: That’s your option at this point in time whether you want to go on the other count or not, but I intend to appeal it and would notify the Court that I intend to appeal that.

DEFENSE COUNSEL: Well, you can appeal Count II and we’ll just go ahead and–well–

THE PROSECUTOR: Are you willing to sever them at this time?

DEFENSE COUNSEL: No, I’m not willing to sever them at this time. This puts us in a precarious position. I would ask for a moment or two recess to talk to my client.

THE COURT: Sure.

(A recess was held)

DEFENSE COUNSEL: For the record, Your Honor, first of all, it would appear to me that, and the Court will correct me if I’m wrong, but there is some good question whether or not the granting of a directed verdict is an appealable order. It certainly seems to me that it’s a finding by the court that the defendant is not guilty. It’s not a ruling on the–not a procedural ruling on the form of the indictment or the sufficiency of the information, it’s a ruling that as a matter of law that the man is not guilty. So the last time I checked not guilty’s are not appealable. So I don’t think that, unless there is some case law that [the prosecutor] has that says he can appeal it, he can’t appeal it.

If the court is going to make a finding, however, that it is appealable and allow the State to appeal that, then I think that we have to ask for a mistrial because I don’t think its proper to have one jury hear part of this case and the other jury hear part of this case when it’s a case of mandatory joinder of these charges. So we either got all or nothing here, folks.

THE PROSECUTOR: I would ask that you reserve your ruling on the Motion for Directed Verdict until I can get in the library over the lunch hour.

THE COURT: Yes, reconsidering the arguments of counsel, the Court will vacate its previous order. The court will reserve the ruling on the Motion for Directed Verdict relative to Count II.”

After a recess, the circuit court held a jury instruction conference. At the request of defense counsel, the jury was instructed not only on involuntary manslaughter and aggravated battery, but also on the lesser-included offense of misdemeanor battery. Upon conclusion of the jury instruction conference, the circuit court judge informed defense counsel that “in the interim,” and in support of his argument that defendant’s motion for a directed verdict on the charge of aggravated battery should not be granted, the prosecutor had provided the judge with a copy of a decision of the appellate court in 
People v. Lowe
, 202 Ill. App. 3d 648 (4th Dist. 1990). The 
Lowe
 court broadly defined the term “about a public way,” as used in the aggravated battery statute, to mean “ ‘in the immediate neighborhood of; *** near’ ” a public way. 
Lowe
, 202 Ill. App. 3d at 653, quoting 1 C.J.S. 
About
, at 329 (1985). The circuit court judge concluded that the facts of the matter at bar fell within the definition of “about a public way” as set forth in 
Lowe
. Accordingly, the circuit court judge denied defendant’s motion for directed verdict on count II. In response, defense counsel stated, “[v]ery well, Your Honor.”

Thereafter, the jury was called into the courtroom, the prosecutor and defense counsel delivered closing arguments, and the circuit court judge instructed the jury. The jury then retired for deliberations at 2:24 p.m. At 7:20 p.m., the jury informed the circuit court that the jurors were “hung.” The circuit court denied defense counsel’s request for a mistrial and instead ruled that the jury would be provided with additional instructions. The jury was then brought into the courtroom. The jury foreperson indicated that verdict forms were signed by all the jurors with respect to two counts, and that the jury was only hung on a third count. The specific counts were not identified for the record at that time. The circuit court instructed the jurors to continue deliberations in an effort to reach a verdict on the third count. Soon thereafter, the jury sent a note to the judge stating that “we are still stuck on the third proposition of the involuntary manslaughter charge. We are having particular problems with what ‘likely’ and great bodily harm means. Any light you may shed would be greatly appreciated.” The circuit court denied the request of defense counsel to declare a hung jury and questioned the jury foreperson in an attempt to discern the problem. Thereafter, the circuit court sent additional instructions to the jurors, and the jury continued deliberations.

Finally, the jury returned to the courtroom and the foreperson indicated that the jury remained unable to reach a verdict on the involuntary manslaughter charge. The jury, however, returned signed verdict forms finding defendant guilty of aggravated battery and battery. At the request of defense counsel, the jury was polled and then discharged. On March 20, 1998, eight days after the jury returned its verdicts, the circuit court judge filed a docketing statement in which he declared a mistrial on the involuntary manslaughter charge on the basis that the jurors “indicated they could not reach a verdict.” The circuit court judge then entered judgment on the verdict of guilty as to the charge of aggravated battery. On May 28, 1998, after denying defendant’s posttrial motion and conducting a sentencing hearing, the circuit court judge sentenced defendant on the aggravated battery conviction to five years’ imprisonment in the Department of Corrections. The circuit court thereafter entered a written order, dated July 2, 1998, directing the circuit clerk to prepare and file a written notice of appeal on behalf of defendant. On July 9, 1998, the clerk filed a written notice of appeal with the appellate court. In addition, the Office of the State Appellate Defender was appointed to represent defendant during the appeal.

While defendant’s appeal was pending in the appellate court, defendant appeared with his retained counsel in the circuit court on January 4, 1999. Defense counsel informed the court that defendant had entered into a negotiated plea agreement with the State on charges in a separate case, number 97–CF–229, as well as on the charges that had already been adjudicated in the instant cause. Cause number 97–CF–229 arose on September 3, 1996, the same day that defendant had been arrested in the matter at bar. Upon a search incident to his arrest, defendant was discovered in the unlawful possession of cannabis and the unlawful possession of a controlled substance. Pursuant to the negotiated plea agreement, the State dismissed the charge of unlawful possession of cannabis. In exchange, defendant agreed to plead guilty to the unlawful possession of a controlled substance and a sentence of three years’ incarceration in the Department of Corrections, to run concurrently with the sentences imposed in the instant matter. As to the charges involved in the instant cause, defendant agreed to plead guilty to both involuntary manslaughter and aggravated battery for a sentence of imprisonment of four years on each offense, to run concurrently. In addition, defendant agreed to withdraw his appeal in the instant matter. As part of this agreement, defendant was given credit for time already served. As defendant had already served 553 days, defendant was left with 82 days to serve on the negotiated pleas. After conducting a hearing, the circuit court entered a written order confirming the plea agreement.

Thereafter, the State filed in the appellate court a motion to supplement the record on appeal with the January 4, 1999, order entered by the circuit court confirming the plea agreement. In addition, the State filed a motion to dismiss defendant’s appeal in accordance with the plea agreement. Defendant filed objections. The appellate court ruled that the State’s motions and defendant’s objections would be taken with the case. In addition, the appellate court ordered the State to file a report of the January 4, 1999, hearing on the plea agreement.

The appellate court vacated defendant’s conviction and sentence for aggravated battery. The appellate court also entered judgments of acquittal on the aggravated battery charge, in addition to the charges of battery, and involuntary manslaughter. 329 Ill. App. 3d 397. In its opinion, the appellate court first considered the State’s motion to dismiss defendant’s appeal under the plea agreement. The appellate court held that with respect to the charges at issue in the case at bar, the plea agreement proceedings and the order entered thereupon were void 
ab initio
 because the trial court lacked subject matter jurisdiction. The appellate court reasoned that once the notice of appeal had been filed, the lower court had no jurisdiction over this matter, and, therefore, any actions taken by it were null and void. In addition, the appellate court held that the parties to an appeal cannot, by agreement or otherwise, revest jurisdiction in the trial court when jurisdiction lies in the appellate court.

The appellate court also rejected the argument advanced by the State that because the trial court had declared a mistrial on the charge of involuntary manslaughter, and because defendant could have been retried on that charge, the trial court retained jurisdiction over at least that one charge. Thus, the State asserted, the plea agreement with respect to the involuntary manslaughter charge was not without circuit court jurisdiction and, therefore, was not null and void. The appellate court held that defendant could not have been retried on the charge of involuntary manslaughter, for to have done so would have violated defendant’s constitutional protection against double jeopardy on two grounds. First, defendant was convicted and sentenced by the circuit court for aggravated battery, and the rule of “one-act, one-crime” would prevent a conviction and sentence on the involuntary manslaughter charge. For the single act of striking the victim in the face with his hand, defendant was charged with two separate and distinct offenses: aggravated battery on a public way and involuntary manslaughter. The appellate court observed that although a defendant may be prosecuted simultaneously for more than one crime carved from a single physical act, a defendant cannot be convicted and sentenced for more than one crime carved from a single physical act. Accordingly, if multiple convictions are entered for those crimes, judgment and sentence may only be entered on the most serious offense. The appellate court concluded that “[b]ecause defendant was convicted of aggravated battery and was sentenced for that offense, he could not thereafter be reprosecuted for the offense of involuntary manslaughter, an offense based on the same physical act as the aggravated battery.” 329 Ill. App. 3d at 404. Second, the appellate court held that where the jury found defendant guilty of aggravated battery but “remained silent” on the charge of involuntary manslaughter and the trial court accepted the guilty verdict and discharged the jury, the “silence” of the jury on the charge of involuntary manslaughter is deemed to be an acquittal of that charge for the purposes of double jeopardy. 329 Ill. App. 3d at 404.

The appellate court then addressed the merits of defendant’s appeal. The appellate court held that the circuit court judge unequivocally acquitted defendant of aggravated battery when the judge granted a directed verdict on this charge in favor of defendant, based upon the insufficiency of the State’s evidence. The appellate court further held that defendant’s right not to be put twice in jeopardy for the same offense was violated when the judge reconsidered his grant of a directed finding in favor of defendant, vacated that ruling, and subsequently sent the aggravated battery charge to the jury. Although the appellate court acknowledged that defendant had waived this issue in the lower court, the court reviewed this contention under the plain error rule on the basis that the alleged error affected defendant’s substantial right to be free from double jeopardy. The appellate court also factually distinguished the matter at bar from this court’s opinion in 
People v. Williams
, 188 Ill. 2d 293 (1999), on the basis that in 
Williams
 the trial court did not actually grant the defendant’s motion for directed verdict but, rather, reserved ruling on the motion until the State could present legal authority. The appellate court observed that, in 
Williams
, “[i]n the same breath with which the trial court indicated that it would grant the defendant’s motion for directed verdict, and without interruption by counsel or by recess, the trial judge also indicated that she was not ready to rule on the motion and indicated that she would accept the submission of legal authority. The parties at no time understood or proceeded as if the trial court had, in fact, granted the defendant’s motion for directed verdict. When it ultimately denied the motion, the trial court did not indicate that it was reconsidering or vacating the grant of a directed verdict.” 329 Ill. App. 3d at 406-07.

In contrast, in the instant matter, the appellate court held that the trial court clearly granted defendant’s motion for a directed verdict based upon the insufficiency of the evidence to prove that the battery occurred on or about a public way. “The prosecutor immediately understood that the trial court had granted a directed verdict in favor of defendant and indicated that he was going to appeal the ruling. Had the trial court’s ruling been equivocal, the prosecutor would have continued his argument on the motion; instead, the prosecutor indicated his intention to appeal. Both attorneys then proceeded to argue about whether the appeal would result in a mistrial of the other charges. A recess was taken, after which the trial court ‘vacated’ the directed verdict and reserved its ruling on defendant’s motion. Both parties, as well as the trial judge, understood that the court had, in fact, granted a directed verdict of acquittal. Once granted, that verdict could not be reconsidered or vacated, and defendant could not be prosecuted further on the charge.” 329 Ill. App. 3d at 407. The appellate court concluded that the actions of the circuit court violated defendant’s right not to be twice put in jeopardy for the same offense. Accordingly, the appellate court vacated defendant’s conviction and sentence for aggravated battery and entered a judgment of acquittal on that charge.

The appellate court also vacated defendant’s conviction for battery. The court reasoned that the acquittal of defendant by the circuit court of the greater offense of aggravated battery constitutes, for double jeopardy purposes, the acquittal of any lesser-included offenses that could have been charged but were not. Battery is a lesser-included offense of aggravated battery, and the State did not charge defendant with battery, but it could have. The appellate court concluded that “[i]n light of the trier of fact’s acquittal of defendant on the greater offense of aggravated battery, a trial on the lesser-included, but uncharged, offense of battery was barred.” 329 Ill. App. 3d at 408. The appellate court thus entered a judgment of acquittal on that charge.

Finally, the appellate court vacated the conviction of involuntary manslaughter. The appellate court concluded that the jury’s silence on that charge, coupled with the trial court’s acceptance of the guilty verdict on the charge of aggravated battery and its discharge of the jury, amounted to an acquittal of the involuntary manslaughter charge.

This court granted the State’s petition for leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

At the outset, we note that the State does not contest the appellate court’s holding that the January 4, 1999, plea agreement was void for want of subject matter jurisdiction. Instead, the State argues only that the appellate court erred in holding that defendant’s right to be free from double jeopardy was violated in this case.

Initially, the State maintains that the appellate court erred in addressing defendant’s assertion that the actions of the circuit court judge had resulted in an acquittal of the aggravated battery charge, and that defendant’s subsequent conviction for aggravated battery violated the prohibition against double jeopardy. The State correctly observes that this argument was procedurally defaulted below. The record discloses that at the time the circuit court judge ultimately decided to deny defendant’s motion for directed verdict on count II, defense counsel did not object. Rather, defense counsel appeared to acquiesce in the ruling, stating, “[v]ery well, Your Honor.” In addition, defendant did not raise the double jeopardy issue in his posttrial motion. See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988). Pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), however, this court may review an argument not properly preserved in the circuit court if we conclude that plain error affecting a substantial right has occurred. 
People v. Shaw
, 186 Ill. 2d 301, 326-27 (1998). For the reasons that follow, we agree with the appellate court that defendant’s substantial right to be free from double jeopardy was violated in the case at bar. We therefore excuse the procedural default.

The State contends that the appellate court erred when it held that the circuit court judge had unequivocally acquitted defendant when the judge originally indicated that he would grant defendant’s motion for a directed verdict on the charge of aggravated battery. According to the State, an examination of the entire colloquy between the judge, the prosecutor, and defense counsel reveals that “the trial judge invited further discussion on the issue and did not make an unequivocal finding of not guilty.” The State focuses upon the fact that the judge never actually stated that defendant was not guilty or was acquitted, and instead told the parties that he was “going to grant the directed verdict” with respect to the charge of aggravated battery. The State interprets the judge’s pronouncement as equivocal, indicating that the judge was open to further argument on the aggravated battery issue. In support of its position, the State attempts to analogize the facts in the matter at bar to those present in our previous decision in 
People v.
 
Williams
, 188 Ill. 2d 293 (1999), where we concluded that because a defendant’s motion for a directed finding of not guilty was not unequivocally granted, his subsequent conviction on that same charge did not place him in double jeopardy.

Defendant counters that the appellate court correctly held that the circuit court, without equivocation, granted a directed verdict of acquittal in defendant’s favor on the charge of aggravated battery. Defendant therefore asserts that the facts in the matter at bar are distinguishable from those present in 
Williams
, and, accordingly, a contrary result is warranted. Defendant further contends that because the circuit court judge unequivocally acquitted defendant of aggravated battery, the appellate court correctly held that defendant’s subsequent prosecution and conviction on the aggravated battery charge violated the constitutional prohibition against double jeopardy. We agree.

The double jeopardy clause of the fifth amendment to the United States Constitution provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” U.S. Const., amend. V. Similarly, article I, section 10, of the Illinois Constitution of 1970 provides that no person shall “be twice put in jeopardy for the same offense.” Ill. Const. 1970, art. I, §10.
(footnote: 1) The prohibition against double jeopardy is animated by the principle that “ ‘the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.’ ” 
People v. Williams
, 188 Ill. 2d 293, 307 (1999), quoting 
Green v. United States
, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223 (1957). The prohibition against double jeopardy “protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.” 
People v. Placek
, 184 Ill. 2d 370, 376-77 (1998); see also 
United States v. Wilson
, 420 U.S. 332, 343, 43 L. Ed. 2d 232, 241, 95 S. Ct. 1013, 1021 (1975).

Jeopardy attaches when the jury is empaneled and sworn. See 
United States v. Martin Linen Supply Co.
, 430 U.S. 564, 569, 51 L. Ed. 2d 642, 650, 97 S. Ct. 1349, 1353 (1977). Jeopardy terminates when the jury arrives at a verdict, or when the trial judge enters a final judgment of acquittal. See 
Fong Foo v. United States
, 369 U.S. 141, 143, 7 L. Ed. 2d 629, 631, 82 S. Ct. 671, 672 (1962). An acquittal triggers the bar against double jeopardy only if the acquittal “actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.” 
Martin Linen Supply Co.
, 430 U.S. at 571, 51 L. Ed. 2d at 651, 97 S. Ct. at 1355; 
People ex rel. Daley v. Crilly
, 108 Ill. 2d 301, 311 (1985). The entry of a directed verdict in favor of a defendant is an acquittal for purposes of double jeopardy when there was insufficient evidence to establish, as a matter of law, some or all of the essential elements of the crime. 
Crilly
, 108 Ill. 2d at 311-12.

The question presented in the cause at bar is whether the circuit court’s oral granting of defendant’s motion for directed verdict on the charge of aggravated battery was an unequivocal judgment of acquittal. If so, then we must determine if the acquittal represented a “resolution” of some or all of the factual elements of the aggravated battery offense. If so, then jeopardy was terminated, and it was error for the circuit court to allow the aggravated battery charge to be presented to the jury.

Both parties at bar contend that our decision in 
People v. Williams
, 188 Ill. 2d 293 (1999), controls the outcome of the matter before us. In 
Williams
, the defendant was charged with first degree murder and armed robbery. At the close of the State’s case in chief, defendant moved for a directed finding of not guilty on all charges. Following argument from both parties, the circuit court judge found that the State did not present sufficient evidence to establish a 
prima facie
 case for the charges. Accordingly, the judge stated, “I’m going to grant the motion for a directed finding and a finding of not guilty” on both charges. After giving a further explanation of the reasons for her ruling, the judge stated that if the parties wished to provide her with additional authority, that she would hold the ruling “in abeyance.” 
Williams
, 188 Ill. 2d at 298. The prosecutor requested that the judge hold in abeyance that portion of the ruling which dealt with the armed robbery charge. The circuit judge responded: “ ‘All right. There’s a finding of not guilty as to the charges of murder. As to the armed robbery charge, I am more than willing to look at any authority.’ ” 
Williams
, 188 Ill. 2d at 299. The parties agreed with the circuit judge that the matter would be held until the next day.

The following day, the circuit court judge stated:

“ ‘We were at the end of the trial yesterday, the [c]ourt had ruled with respect to the [m]urder counts. There was a question as to the armed robbery count. The [c]ourt expressed its belief that, based upon the [c]ourt’s findings of the facts, the armed robbery charge would be inappropriate, but we put it over to today’s date for the parties to supply any authority.’ ” 
Williams
, 188 Ill. 2d at 299.

The State presented the court with authority, and both parties presented argument. The circuit court then denied the defendant’s motion for a finding of not guilty as to the armed robbery charge. No further evidence was presented. Following closing arguments, the circuit court found the defendant guilty of armed robbery, and sentenced the defendant to a term of 17 years’ imprisonment.

On appeal, the defendant asserted that the circuit court unequivocally granted his motion for a finding of not guilty on the armed robbery charge. This court rejected the defendant’s argument, and held that, under the specific facts presented, the circuit court did not unequivocally grant defendant’s motion for a directed finding of not guilty as to the armed robbery charge. We stressed that a review of the “entire response” of the trial judge was warranted. 
Williams
, 188 Ill. 2d at 301-02. We observed that shortly after informing the parties that she would grant the defendant’s motion, the circuit court judge indicated that she was not yet prepared to rule by stating that she would hold the ruling “in abeyance” if the parties wished to provide her with legal authority. Upon the State’s request to hold the portion of the ruling relating to the armed robbery charge in abeyance, the circuit court judge remarked that she needed to review legal authority on this issue, that she welcomed submissions of authority by the parties, and that she was unsure at that point whether a finding of not guilty on the armed robbery charge would be legally supportable. Upon these specific facts, we concluded that “the record as a whole” disclosed that the circuit court judge had expressed to the parties that she would postpone ruling on the defendant’s motion for a finding of not guilty on the armed robbery charge until she had an opportunity to review pertinent legal authorities. 
Williams
, 188 Ill. 2d at 301-02.

We agree with the appellate court below that our decision in 
Williams
 is factually distinguishable from the matter at bar. Our careful review of the entire record in the cause before us reveals that, unlike in 
Williams
, the circuit court judge here unequivocally acquitted defendant of aggravated battery. In the instant matter, the circuit court judge stated that because the prosecution failed to present evidence that the victim was “on or about a public sidewalk” as required under the aggravated battery statute, “I’m going to grant the directed verdict as to count II.” Unlike in 
Williams
, where the trial judge stated that she would grant the defendant’s motion, but also invited the parties to submit legal authority and stated that she would be “happy to look at [the legal authority] if you want me to hold [the ruling] in abeyance,” the circuit court judge in the matter at bar neither indicated willingness to examine authority with respect to the aggravated battery charge, nor offered to postpone the ruling until the parties had an opportunity to present legal authority. Rather, after directing the verdict on the aggravated battery charge in favor of defendant, the circuit court judge asked the parties the general question if there was “[a]nything else while we are still on the record?” In answer to this query, the prosecutor requested that he be given “leave to appeal that ruling.” Thereafter, the prosecutor and defense counsel debated whether the court’s ruling directing a verdict in defendant’s favor was appealable. Defense counsel requested a recess to speak to his client, and, when the parties returned on the record, they continued to debate the propriety of appealing the court’s ruling. The record reveals that the circuit court judge, as well as the parties, acted in accordance with the belief that the circuit judge had granted defendant’s motion for a directed verdict as to the charge of aggravated battery. The discussions held after the ruling was made focused solely upon the propriety and the procedure of appealing the court’s ruling. Unlike in 
Williams
, where the parties and the court debated the elements of the charge and the sufficiency of the evidence, neither the parties nor the court in the matter before us discussed any issues with respect to the elements of aggravated battery nor the sufficiency of the evidence supporting the aggravated battery charge.

Towards the end of the debate on the appealability of the court’s ruling, the prosecutor requested that the circuit court judge “reserve ruling” on defendant’s motion until the prosecutor could “get in the library over the lunch hour.” At this point, the circuit court judge stated that, “reconsidering the arguments of counsel, the court will vacate its previous order.” The circuit judge further stated that he would “reserve the ruling on the motion for directed verdict relative to count II.” Our conclusion that the circuit court judge unequivocally granted defendant’s motion for a not-guilty finding is strengthened by the above-quoted statements of the circuit court judge. Indeed, the judge’s statements provide clear indication that defendant’s motion was granted: the judge states that upon “reconsidering the arguments of counsel” he will “vacate” his “previous order.” It was only after another recess, and after conducting the jury instruction conference, that the circuit court judge stated that “in the interim” the State had provided him with a case defining the term “about a public way” as used in the aggravated battery statute, and that, based upon that definition, he was denying defendant’s motion for a directed verdict on count II.

We conclude that, under the specific facts presented in the matter at bar, the circuit court judge unequivocally granted defendant’s motion for a directed finding on the aggravated battery charge. In turn, we conclude that the acquittal represented a resolution of “some or all of the factual elements of the offense charged.” 
Martin Linen Supply Co.
, 430 U.S. at 571, 51 L. Ed. 2d at 651, 97 S. Ct. at 1355; 
Crilly
, 108 Ill. 2d at 311. Therefore, it was improper for the circuit court judge to reconsider and vacate his ruling acquitting defendant of aggravated battery. As we observed in 
Williams
, “reconsideration and vacation of an order directing a verdict of not guilty exposes a criminal defendant to further proceedings for resolving the factual elements of the offense in violation of double jeopardy principles.” 
Williams
, 188 Ill. 2d at 301, citing 
People v. Mink
, 141 Ill. 2d 163, 179 (1990). Accordingly, the principles of double jeopardy barred the aggravated battery charge from being presented to the jury. Therefore, defendant’s subsequent conviction for armed robbery violates double jeopardy.

“The double jeopardy clause precludes the State from retrying a defendant once a reviewing court has determined that the evidence introduced at trial was legally insufficient to convict.” 
People v. Mink
, 141 Ill. 2d 163, 173-74 (1990); see also 
Tibbs v. Florida
, 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211 (1982).
(footnote: 2) Accordingly, we affirm the judgment of the appellate court on this issue. Defendant’s conviction and sentence for aggravated battery was properly vacated and a judgment of acquittal was properly entered on the aggravated battery charge.

We further agree with the appellate court that, as a result of defendant’s acquittal on the charge of aggravated battery, defendant’s conviction for the lesser-included offense of misdemeanor battery cannot stand. “ ‘[T]he acquittal of a defendant on an indictment for an offense which includes lesser offenses, operates also as an acquittal, and as a bar to any subsequent prosecution, of all included lesser offenses of which he might have been convicted on the indictment charging the higher offense.’ ” 
People v. Knaff
, 196 Ill. 2d 460, 471 (2001), quoting 
People v. Harrison
, 395 Ill. 463, 466 (1946). Accordingly, defendant’s conviction for misdemeanor battery was properly vacated and a judgment of acquittal was properly entered by the appellate court.

The State next contends that the appellate court erred when it entered an acquittal for the charge of involuntary manslaughter. Before addressing this issue, it is important to define the relationship between the charges of involuntary manslaughter and aggravated battery lodged against the defendant in this case.

As noted, defendant struck the victim with a single blow to the face, causing the victim to fall backwards and strike his head on the sidewalk. The victim then died as a result of the head injury he sustained. Accordingly, the charges of involuntary manslaughter and aggravated battery were both carved from the defendant’s single act of striking the victim in the face. As a consequence, these two charges were subject to compulsory joinder under section 3–3(b) of the Criminal Code of 1961 (720 ILCS 5/3–3(b) (West 2000)). Moreover, based on “one-act, one-crime” principles first recognized by this court in 
People v. King
, 66 Ill. 2d 551 (1977), because precisely the same physical act formed the basis for the two separate offenses charged, defendant could be prosecuted for each offense, but only one conviction and sentence could be imposed. 
People v. Segara
, 126 Ill. 2d 70, 77 (1988); H. Eisenberg, 
Multiple Punishments for the “Same Offense” in Illinois
, 11 S. Ill. U. L.J. 217, 236-37 (1987). Thus, had this court reinstated defendant’s conviction for aggravated battery, there would be no need to consider the correctness of the appellate court’s judgment of acquittal entered on the charge of involuntary manslaughter. Based on “one-act, one-crime” principles, the State would have no need to prosecute defendant again on the charge of involuntary manslaughter because the conviction and sentence for aggravated battery would have acted as a bar to any conviction and sentence for involuntary manslaughter.

It may be noted, however, that the “one-act[,] one-crime rule has never been viewed as a rule of constitutional dimension.” 
People v. Britt
, 265 Ill. App. 3d 129, 155 (1994) (Cook, J., specially concurring), citing 
Blockburger v. United States
, 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182 (1932). As stated, the prohibition against double jeopardy protects a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. 
Placek
, 184 Ill. 2d at 376-77. Thus, where, as here, the same act constitutes a violation of two distinct statutory provisions, but each offense requires proof of an additional fact not required to prove the other offense, the two offenses are not the same for double jeopardy purposes. 
People v. Totten
, 118 Ill. 2d 124, 138 (1987). Accordingly, neither conviction nor acquittal for the offense of aggravated battery would preclude defendant’s subsequent prosecution for the offense of involuntary manslaughter based on double jeopardy principles.

We now turn to the merits of the State’s appeal on the question of whether the trial court erred when it entered a judgment of acquittal on the charge of involuntary manslaughter. The appellate court, adopting the defendant’s reasoning, held that an acquittal on the charge of involuntary manslaughter was implied by the jury’s “silence” on that charge. Citing 
People v. Conley
, 187 Ill. App. 3d 234 (1989), the appellate court ruled that the trial court’s acceptance of the jury’s verdicts on aggravated battery and battery and its discharge of the jury must be interpreted as an implied acquittal on the charge of involuntary manslaughter.

We disagree with the appellate court’s representation of the facts and, therefore, must reject its conclusion. Simply stated, the jury was not “silent” as to the charge of involuntary manslaughter. Rather, the jury explicitly informed the court that it was unable to reach a unanimous decision with regard to the charge of involuntary manslaughter. As a result, the trial court declared a mistrial as to that charge.

It is well settled that a trial court may declare a mistrial if a jury is unable to reach a verdict and that principles of double jeopardy will not bar subsequent prosecution by the State on the same charges. See, 
e.g.
, 
People v. Daniels
, 187 Ill. 2d 301, 310 (1999), citing 
People v. Cole
, 91 Ill. 2d 172, 175 (1982). We find, therefore, that the jury’s failure to render a verdict on the charge of involuntary manslaughter in this case did not constitute an implied acquittal. The appellate court erred when it so held.

CONCLUSION

For the foregoing reasons, we affirm the appellate court’s judgment vacating defendant’s conviction and sentence for aggravated battery and entering a judgment of acquittal on that charge. We also affirm the appellate court’s judgment vacating defendant’s conviction for misdemeanor battery. We reverse the appellate court’s entry of a judgment of acquittal on the charge of involuntary manslaughter. The judgment of the circuit court is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

Appellate court judgment affirmed

in part and reversed in part;

circuit court judgment reversed;

cause remanded.

JUSTICE FREEMAN, specially concurring:

Although I join in today’s opinion, I write separately in order to make several observations.

In 
People v. Mink
, 141 Ill. 2d 163, 179 (1990), this court, relying on both state and federal case law, noted that the reconsideration and vacation of a oral grant of a motion to direct a verdict violated the double jeopardy clauses of both the state and federal constitutions. More recently, we iterated this rule in 
People v. Williams
, 188 Ill. 2d 293, 301 (1999), stating that “reconsideration and vacation of an order directing a verdict of not guilty exposes a criminal defendant to further proceedings for resolving the factual elements of the offense in violation of double jeopardy principles.” We reaffirm this rule in today’s opinion. Slip op. at 17.

I note, however, that our conclusion that “reconsideration and vacation of an order directing a verdict of not guilty exposes a criminal defendant to further proceedings for resolving the factual elements of the offense in violation of double jeopardy principles” appears to be in conflict with decisions from federal courts which have addressed similar factual circumstances. For example, in 
United States v. Washington
, 48 F.3d 73 (2d Cir. 1995), the district court orally granted the defendant’s motion for acquittal at the close of the government’s case in chief. The judge did not enter judgment, however, and the trial continued with the defense calling its first witness. The court then adjourned the proceedings for a lunch break, during which time the judge reconsidered the oral grant of acquittal. After lunch, the judge reversed the order outside the presence of the jury. The Second Circuit affirmed the district court’s reversal, stating that “[a]n oral grant of a motion for acquittal is ‘no more than an interlocutory order’ which the court has ‘inherent power to reconsider and modify *** prior to the entry of judgment.’ ” 
Washington
, 48 F.3d at 79, quoting 
United States v. LoRusso
, 695 F.2d 45, 52-53 (2d Cir. 1982). See also 
United States v. Byrne
, 203 F.3d 671 (9th Cir. 2000) (same); 
United States v. Baggett
, 251 F.3d 1087, 1095 (6th Cir. 2001) (noting that an oral grant of a directed finding does not terminate jeopardy inasmuch as a court is free to change its mind prior to the entry of judgment).

My review of these federal authorities reveals that the federal courts have grounded their decisions on the same case law from the United States Supreme Court that this court relied upon in both 
Mink
 and 
Williams
. Nevertheless, the federal courts do not appear to bar reconsideration of an oral grant of a motion for a directed finding as strictly as our court. In 
Washington
, for example, it is clear that the district court did not “allow[ ] but then den[y] the motion for a directed verdict ‘virtually with the same breath,’ ” such that it could be said that the defendant was never actually acquitted (
People v. Williams
, 188 Ill. 2d 293, 303 (1999), quoting with approval 
People v. Vilt
, 119 Ill. App. 3d 832, 835 (1983)) because after the oral motion had been granted, the trial continued with the defendant’s case in chief. The reconsideration came later when the district court had adjourned the proceedings for lunch. Thus, federal case law seems to suggest that the reconsideration of an oral grant of a motion for a directed finding may not be repugnant to the double jeopardy clause of the fifth amendment to the United States Constitution.

That the federal courts appear to reach a conclusion different from ours on a given issue is of no moment in most cases. See, 
e.g.
, 
People v. Kokoraleis
, 132 Ill. 2d 235, 293-94 (1989) (explaining that decisions of lower federal courts on questions of constitutional law are not binding on state courts). In this case, however, I believe the difference in outcomes is noteworthy because we have repeatedly stressed that our own state constitutional double jeopardy clause is to be considered in the same manner as the double jeopardy clause of the federal constitution. See 
In re P.S.
, 175 Ill. 2d 79, 91 (1997); 
People v. Levin
, 157 Ill. 2d 138 (1993). I note that there is nothing in our opinions in 
Williams
 and 
Mink
 that suggests that the analyses employed in those cases were the result of a decision to view the double jeopardy clause contained in the Illinois Constitution more comprehensively than that contained in the fifth amendment.

The result we reach in today’s decision is predicated on the analysis contained in our opinion in 
Williams
. This is in accordance with the views of the parties, both of whom have maintained throughout this appeal that the outcome in this case is controlled solely by 
Williams
. The parties have not cited to this court any federal cases nor do they argue that the analysis in 
Williams
 is flawed and should be revisited. Accordingly, the question of whether this court has interpreted the double jeopardy clause properly in light of the clause’s construction by the federal courts is not before us. I believe that the difference between our case law and that of the federal courts, along with the reasons for it, is deserving of this court’s future consideration. Because the parties have not raised this issue in the present case, I limit my discussion here to noting the divergence of opinion that appears to exist on this double jeopardy question. In so doing, I offer no opinion as to what impact, if any, federal double jeopardy decisions would have on the outcome in the case at bar.

FOOTNOTES
1:     
1
The statutory form of this rule is set forth in section 3–4(a)(1) of the Criminal Code of 1961 (720 ILCS 5/3–4(a)(1) (West 1996)), which provides that

“(a) A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if the former prosecution:

(1) Resulted in either a conviction or an acquittal or in a determination that the evidence was insufficient to warrant a conviction[.]”

2:     
2
In contrast, if a conviction is reversed because of trial error, rather than for evidentiary insufficiency, the double jeopardy clause does not preclude a defendant’s retrial. 
Burks v. United States
, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978); 
Mink
, 141 Ill. 2d at 173.